BENAVIDES, Circuit Judge:
In this case we consider whether the district court properly granted a Petition for Writ of Habeas Corpus filed by Calvin Jerold Burdine based on state habeas court findings that Burdine’s court-appointed attorney slept repeatedly throughout the guilt-innocence phase of his 1984 capital murder trial. The district court concluded “sleeping counsel is equivalent to no counsel at all” and granted relief pursuant to 28 U.S.C. § 2254. A divided panel of this Court reversed, holding that (1) the district court’s presumption of prejudice for purposes of ineffective assistance constituted a new rule of law from which Burdine could not benefit under Teague’s nonretroactivity doctrine, and (2) the circumstances of Burdine’s representation did not require a presumption of prejudice to ensure the fairness of Burdine’s capital murder trial. See Burdine v. Johnson, 231 F.3d 950 (5th Cir.2000).
As an en banc court, we AFFIRM the judgment of the district court.[1] The Supreme Court has long recognized that “a trial is unfair if the accused is denied counsel at a critical stage of his trial.” United States v. Cronic, 466 U.S. 648, 659, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984). When a state court finds on the basis of credible evidence that defense counsel repeatedly slept as evidence was being introduced against a defendant, that defendant has been denied counsel at a critical stage of his trial. In such circumstances, the Supreme Court’s Sixth Amendment jurisprudence compels the presumption that counsel’s unconsciousness prejudiced the defendant.
I.
In January 1984, after a trial that included 12 hours and 51 minutes of total time before the jury over a period of six days, a Harris County, Texas jury convicted petitioner Burdine of capital murder in connection with the death of W.T. “Dub” *339 Wise. Wise was killed in April 1983 during the course of a robbery committed by Douglas MeCreight and Burdine. After the jury affirmatively answered the two special issues, the state trial court assessed punishment as death by legal injection in accordance with Texas law. See Tex. Penal Code Ann. § 19.03(a)(2). The Texas Court of Criminal Appeals affirmed Burdine’s conviction and sentence on direct appeal. See Burdine v. Texas, 719 S.W.2d 309 (Tex.Crim.App.1986). Throughout his trial and direct appeal, Burdine’s court-appointed counsel was Joe F. Cannon of Houston.
Burdine’s initial state application for a writ of habeas corpus was denied on June 29, 1994. Burdine filed a second application in December 1994. In relation to that application, the state habeas court conducted an evidentiary hearing during which Burdine called eight witnesses, including three jurors from the capital murder trial and the clerk of the court in which the trial was held. These four neutral witnesses, which the state habeas court found highly credible, testified that Cannon repeatedly dozed or slept as the State questioned witnesses and presented evidence supporting its case against Bur-dine.
Daniel Strickland, the foreman of the jury, recalled seeing Cannon doze or nod off between two and five times while the prosecuting attorney questioned witnesses. Myra Davis remembered being struck by the spectacle of Cannon’s sleeping on the second day of trial, the same day that trial judge Joseph Guarino had chastised her for tardiness. According to Davis, Cannon “would nod his head down on his chest” with his eyes closed during the questioning of witnesses. “I was thinking to myself, you know look at him and [Judge Guarino] calls me out [for tardiness] in front of all these people, ... and look at what that man is doing.” Like Davis, Craig Engel-hardt related that Cannon “would nod his head down, bob it, with eyes closed during all this.” Engelhardt recalled Cannon sleeping as many as ten times during the trial, at one point for “a good probably at least 10 minutes” as the prosecution questioned a witness.
The testimony of Rose Berry, the deputy clerk assigned to the trial court that conducted Burdine’s trial, confirmed the jurors’ recollections. Berry recalled “lots of incidents” of Cannon sleeping during the trial. Though Berry could not specify a proportion of the trial in which Cannon slept, she did “know that he fell asleep and that he was asleep for long periods of time during the questioning of witnesses.” According to the state habeas court, Berry was “the most compelling witness” in the proceeding not only because of her neutrality, but also because she was not required to pay attention to witnesses or the prosecutor and thus had a better opportunity to observe Cannon’s conduct.
Other witnesses at the hearing, including Judge Joseph Guarino, prosecutor Ned Morris, and Carolyn Bonnin, a juror, testified that they had not noticed Cannon asleep during the trial. The prosecutor’s testimony was challenged by James Pillow, the court coordinator of the trial court at the time of Burdine’s trial. Pillow recalled having a conversation with the prosecutor, in which the prosecutor questioned Cannon’s competency to represent capital defendants and suggested that Cannon not be appointed counsel in future capital cases. Neither the prosecutor nor Judge Guarino recalled ever discussing this issue, but Pillow noted that Cannon was not appointed by Judge Guarino to represent capital defendants after Burdine’s trial. Cannon himself testified he had a “habit” of closing his eyes and tilting his head forward while concentrating, but that he *340 never slept during Burdine’s trial. The state habeas court pointed out the inconsistency between Cannon’s testimony and the descriptions of the four neutral witnesses that saw Cannon’s head bobbing. Moreover, Cannon’s testimony as to his concentration habit was impeached by Philip Scardino, an attorney who worked with Cannon on a different capital case. While Scardino did not recall Cannon concentrating with his eyes closed, he did observe Cannon dozing during the voir dire of witnesses.
On April 3, 1995, the state habeas court entered comprehensive findings of fact and conclusions of law. After detailing the evidence presented during the evidentiary hearing, the court entered “a finding that defense counsel dozed and actually fell asleep during portions of [Burdine’s] trial on the merits, in particular the guilt-innocence phase when the State’s solo prosecutor, was questioning witnesses and presenting evidence.” Based on evidence that “defense counsel repeatedly dozed and/or actually slept during substantial portions of [Burdine’s] capital murder trial so that defense counsel was, in effect, absentf,]” the habeas court concluded that a showing of prejudice in accordance with Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), was not required.[2] Accordingly, the court recommended that habeas relief be granted on Burdine’s claim of ineffective assistance of counsel. In a one-page, unsigned opinion, the Texas Court of Criminal Appeals agreed that “the trial court’s findings of fact [regarding the sleeping of trial counsel] are supported by the record.” The court nevertheless concluded that Burdine was not entitled to relief because “he failed to discharge his burden of proof under Strickland v. Washington, 446 [sic; 466] U.S. [at] 669[, 104 S.Ct. 2052] (1984).” Ex Parte Burdine, 901 S.W.2d 456 (Tex.Crim.App.1995).
Burdine then filed an application for a writ of habeas corpus in the federal district court for the Southern District of Texas pursuant to 28 U.S.C. § 2254. That court determined, on the basis of the factual findings made by the state habeas court and accepted by the Court of Criminal Appeals, that Cannon’s unconsciousness during Burdine’s capital murder trial amounted to constructive denial of counsel for substantial periods of that trial. See Burdine v. Johnson, 66 F.Supp.2d 854, 866 (S.D.Tex.1999). Consequently, the district court determined that prejudice should be presumed in accordance with the Supreme Court’s analysis in Strickland and United States v. Cronic, 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984). See id. The State now appeals from this determination.
II.
This federal habeas proceeding turns on the effect of state court findings that counsel repeatedly slept “during portions of [Burdine’s] trial on the merits, in particular during the guilt-innocence phase when the State’s solo prosecutor was questioning witnesses and presenting evidence.” Although the Texas Court of Criminal Appeals rejected Burdine’s habeas application, it found that the record supported the habeas court’s findings of fact. In this appeal, the State concedes that we are bound by the habeas court’s findings of fact. Specifically, the State “does not dispute that [counsel] dozed and actually fell asleep intermittently during Burdine’s capital murder trial.” The State maintains that habeas relief is nevertheless inappro *341 priate for two reasons: (1) the district court’s presumption of prejudice on the facts of this case amounts to a “new rule” that Teague v. Lane, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), bars Burdine from raising in this collateral proceeding, and (2) the facts of Burdine’s case do not warrant a presumption of prejudice because Burdine’s counsel slept during indeterminate periods of what otherwise amounted to an adversarial trial.
The State’s arguments fail to address the fundamental unfairness in Bur-dine’s capital murder trial created by the consistent unconsciousness of his counsel. It is well established that a defendant “requires the guiding hand of counsel at every step in the proceedings against him.” Powell v. Alabama, 287 U.S. 45, 69, 53 S.Ct. 55, 64, 77 L.Ed. 158 (1932). Moreover, both the Supreme Court and this Court have recognized that the absence of counsel at critical stages of a defendant’s trial undermines the fairness of the proceeding and therefore requires a presumption that the defendant was prejudiced by such deficiency. See United States v. Cronic, 466 U.S. 648, 659, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984); United States v. Russell, 205 F.3d 768, 770-71 (5th Cir.2000). Applying this longstanding principle, we conclude that a defendant’s Sixth Amendment right to counsel is violated when that defendant’s counsel is repeatedly unconscious through not insubstantial portions of the defendant’s capital murder trial. Under such circumstances, Cronic requires that we presume that the Sixth Amendment violation prejudiced the defendant.

A. Burdine Does Not Seek the Benefit of a “Neiv Rule”

The State first argues that Bur-dine’s claim creates a new rule of law barred by the non-retroactivity principle of Teague. When applying Teague to determine whether Burdine is eligible to habeas relief we follow three steps: (1) we determine when Burdine’s conviction and sentence became final, (2) we “survey the legal landscape as it then existed to determine whether a state court considering [Burdinej’s claim at the time his conviction became final would have felt compelled by existing precedent to conclude that the rule he seeks was required by the Constitution!,]” and (3) if Burdine seeks the benefit of a new rule, we must decide whether the rule falls within one of the narrow exceptions to the non-retroactivity principle. Caspari v. Bohlen, 510 U.S. 383, 390, 114 S.Ct. 948, 953, 127 L.Ed.2d 236 (1994); see also Fisher v. Texas, 169 F.3d 295, 305 (5th Cir.1999). Whether Teague’s non-ret-roactivity rule precludes Burdine from benefitting from the presumption of prejudice he asserts is a question of law, we therefore engage in this three-part analysis de novo. See United States v. Shunk, 113 F.3d 31, 34 (5th Cir.1997).
All parties agree that Burdine’s conviction became final in 1987, when the Supreme Court denied certiorari. See Caspari, 510 U.S. at 390, 114 S.Ct. at 953. Thus, we begin our analysis with the second issue: whether a state court in 1987 would have felt compelled by Supreme Court precedent to conclude that the Sixth Amendment required a presumption of prejudice when a defendant’s counsel slept repeatedly during the defendant’s capital murder trial as evidence was being presented by the State. Because application of Sixth Amendment principles firmly established by 1987 compel such a presumption of prejudice on the facts of this case, we conclude that the rule Burdine seeks to benefit from is not new, and hence not barred by Teague.
In Teague, a plurality of the Supreme Court espoused Justice Harlan’s view of *342 retroactivity that a new rule of law would not be applied on collateral review to cases that became final prior to the announcement of the new rule. Teague, 489 U.S. at 310, 109 S.Ct. at 1075. Since Teague, the Court has clarified that this principle of non-retroactivity “serves to ensure that gradual developments in the law over which reasonable jurists may disagree are not later used to upset the finality of state convictions valid when entered.” Sawyer v. Smith, 497 U.S. 227, 110 S.Ct. 2822, 2828, 111 L.Ed.2d 193 (1990). Moreover, the rule reflects the limited purpose of federal habeas corpus “to ensure that state convictions comply with the federal law in existence at the time the conviction became final, and not provide a mechanism for the continuing reexamination of final judgments based upon later emerging legal doctrine.” Id.
Applying the non-retroactivity principle in a way that balances the need for finality of convictions against the need to enforce minimal constitutional protections has proven challenging. Even in Teague, the plurality opinion acknowledged that the task of determining whether a case announces a new rule is often difficult. For that reason, the plurality expressly did not “attempt to define the spectrum of what may or may not constitute a new rule” for purposes of retroactivity. Teague, 489 U.S. at 301, 109 S.Ct. at 1070; see also Mackey v. United States, 401 U.S. 667, 695, 91 S.Ct. 1160, 28 L.Ed.2d 404 (1971) (Harlan, J., concurring in judgments and dissenting in part) (recognizing “the inevitable difficulties that will arise in attempting to determine whether a particular decision has really announced a ‘new’ rule at all or whether it has simply applied a well-established constitutional principle to govern a case which is closely analogous to those which have been previously considered in the prior ease law.”). The Teague plurality did, however, offer the following general guidelines:
“[A] case announces a new rule when it breaks new ground or imposes a heretofore new obligation on the States or the Federal Government. To put it differently, a case announces a new rule if the result was not dictated by precedent existing at the time the petitioner’s conviction became final.”
Id. (emphasis in original). A majority of the Court employed these guidelines shortly after Teague in Penry v. Lynaugh, 492 U.S. 302, 316, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989). Indeed, only in Penry did a majority of the Court adopt Teague’s non-retroactivity doctrine. See id. Thus, the analysis in Penry is instructive with respect to the distinction between a new rule under Teague and an application of established principles to a case that is analogous to prior precedent
Penry claimed that his Eighth Amendment rights were violated because the jury in his capital murder trial was unable to fully consider and give effect to mitigating evidence of his mental retardation and childhood abuse when answering Texas’ three statutory special issues at sentencing. Penry did not facially challenge the Texas death penalty statute. Instead, Penry claimed that, “on the facts of [his] case, the jury was unable to fully consider and give effect to the mitigating evidence ... in answering the three special issues.” 492 U.S. at 315, 109 S.Ct. at 2945 (emphasis added). The State argued that Penry’s asserted rule amounted to an extension of established principles and consequently was barred by Teague. The Court was thus faced with determining whether the rule asserted by Penry was an application of established principles or a new rule of law.
Prior to 1986, when Penry’s conviction and sentence became final, the Supreme *343 Court had established that “in capital cases the fundamental respect for humanity underlying the Eighth Amendment requires consideration of the character and record of the individual offender and the circumstances of the particular offense as a constitutionally indispensable part of the process of inflicting the penalty of death.” See Penry, 492 U.S. at 316, 109 S.Ct. at 2945 (quoting Woodson v. North Carolina, 428 U.S. 280, 304, 96 S.Ct. 2978, 2991, 49 L.Ed.2d 944 (1976)). The Court had stressed this fundamental principle in upholding Texas’ capital punishment statute against a facial Eighth Amendment challenge in Jurek v. Texas, 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976). In Jurek, the Court concluded that Texas’ sentencing scheme satisfied the Eighth Amendment provided that sentencing juries were allowed to consider any mitigating circumstances relevant to a specific case. Jurek, 428 U.S. at 272, 96 S.Ct. at 2956. Supreme Court decisions subsequent to Jurek and Woodson, but prior to Penry’s conviction becoming final, reaffirmed the need for an individualized assessment of the appropriateness of the death penalty under the Eighth Amendment. See Lockett v. Ohio, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978); Eddings v. Oklahoma, 455 U.S. 104, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982) (both concluding that a sentencer cannot be precluded from considering and giving effect to relevant mitigating circumstances when determining the appropriateness of the death penalty in a particular case). At the same time, however, no Supreme Court decision prior to Penry had commanded courts to instruct juries how to consider specific mitigating evidence in a particular case. Instead, the case law established fundamental Eighth Amendment principles for application in analogous cases.
The Supreme Court concluded that despite the absence of a specific holding requiring the instruction sought by Penry, the rule Penry sought to benefit from was dictated by the Eighth Amendment principles espoused and enforced in the Court’s prior cases. According to the Court, it was firmly established at the time of Pen-ry’s conviction that a sentencer in Texas had to consider any mitigating evidence specific to the circumstances of Penry and his crime. Penry, 492 U.S. at 317, 109 S.Ct. at 2946. The rule that Penry sought — a requirement that the jury be instructed specifically what mitigating evidence it should consider and how it should consider that evidence when answering Texas’ special issues — was not “new” for the purposes of Teague because it represented a specific application of general Eighth Amendment principles outlined in prior analogous cases. Though Penry’s claim for relief did require the State to issue specific instructions that it previously had not issued, the rule which controlled Penry’s case was nevertheless not new. Moreover, the rule did not impose a new obligation on Texas, it simply required that Texas fulfill its obligation, expressed in Jurek, to ensure “that the special issues [of the Texas capital punishment statute] would be interpreted broadly enough to permit the sentencer to consider all of the relevant mitigating evidence a defendant might present in imposing sentence.” Id.
Penry’s recognition that the application of established general procedural principles in an analogous context is not a new rule barred by Teague remains the law today. See Bousley v. United States, 523 U.S. 614, 620, 118 S.Ct. 1604, 1610, 140 L.Ed.2d 828 (1998) (rejecting the argument that the petitioner’s claim that his guilty plea was not knowing and intelligent was barred by Teague in part because “[t]here is surely nothing new about this principle .... ”); see also Wright v. West, 505 U.S. 277, 304, 112 S.Ct. 2482, 2497, 120 *344 L.Ed.2d 225 (1992) (O’Connor, J., concurring) (“If a proffered factual distinction between the case under consideration and pre-existing precedent does not change the force with which the precedent’s underlying principle applies, the distinction is not meaningful, and any deviation from precedent is not reasonable.”). Just as Penry sought an application of Eighth Amendment principles well-established at the time his conviction became final, Burdine now seeks the application of Sixth Amendment principles that were well-established at the time that his conviction became final. Just as Teague did not prevent Penry from receiving the benefit of established Eighth Amendment protections, it does not prevent Burdine from receiving the benefit of established Sixth Amendment protections.
At the time that Burdine’s conviction became final in 1987, it was well established in the legal landscape that defendants have the Sixth Amendment right to effective assistance of counsel at every critical stage of the proceedings against them. See Powell, 287 U.S. at 69, 53 S.Ct. at 64.[3] The purpose of this Sixth Amendment guarantee was and “is to ensure that a defendant has the assistance necessary to justify reliance on the outcome of the proceeding.” Strickland v. Washington, 466 U.S. 668, 689, 104 S.Ct. 2052, 2067, 80 L.Ed.2d 674 (1984); Cronic, 466 U.S. at 658, 104 S.Ct. at 2046 (“[T]he right to the effective assistance of counsel is recognized not for its own sake, but because of the effect it has on the ability of the accused to receive a fair trial”). Because the Sixth Amendment serves solely to ensure a fair and reliable trial, “any deficiencies in counsel’s performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution.” Id. In Cronic, however, the Court recognized that some egregious circumstances “are so likely to prejudice the accused that the cost of litigating their effect in a particular trial is unjustified.” Cronic, 466 U.S. at 658, 104 S.Ct. at 2046. Both in Cronic and in Strickland, the Supreme Court recognized that the absence or denial of counsel at a critical stage of a criminal proceeding represents one of the egregious circumstances that requires the presumption of prejudice. See Cronic, 466 U.S. at 659, 104 S.Ct. at 2047; Strickland, 466 U.S. at 692, 104 S.Ct. at 2067.[4] Bur-dine seeks an application of this rule to the facts of his case. He argues that he was repeatedly without counsel throughout the most critical part of his capital murder trial: the guilt-innocence phase. Because he was without counsel, Burdine argues that we should presume prejudice in ac *345 cordance with Cronic and Strickland. We agree with Burdine that the rule he seeks to benefit from is neither new, nor should it have been surprising to the State of Texas at the time of Burdine’s conviction in 1987.
The State concedes that Crortic calls for the presumption of prejudice when, during a critical stage of trial, counsel is either (1) totally absent, or (2) present but prevented from providing effective assistance. See Cronic 466 U.S. at 659 n. 25, 104 S.Ct. at 2047 n. 25. The State argues that applying this rule to the facts of Burdine’s case expands Cronic’s holding and therefore creates a “new rule” barred by Teague. Specifically, the State maintains that (1) Cronic calls for a presumption of prejudice relating to absence of counsel only when state action causes such absence, and (2) any absence by Burdine’s attorney was not proven to have taken place during a “critical stage” of Burdine’s trial, as such term was understood by the Court in Cronic. We disagree with the State’s excessively narrow reading of Cronic.
Initially, we note that the State's proposed state action requirement does not flow from the language of Cronic. Cronic recognized that because our system of justice deems essential the assistance of counsel, “a trial is unfair if the accused is denied counsel at a critical stage of his trial.” Id. In a footnote following this sentence, the Court explained that presumption of prejudice was appropriate “when counsel was either totally absent, or prevented from assisting the accused during a critical stage of the proceeding.” Though the term “prevented from assisting the accused” suggests the existence of some indeterminate external force, no inference of a state action requirement is possible from the Court’s language discussing the appropriateness of a presumption when counsel is “totally absent.”[5] Later in Cronic the Court more directly dispelled the State’s proposed state action requirement when it dismissed the idea that the cause of a Sixth Amendment deficiency should control whether a presumption of prejudice was warranted. The Court explained:
“The fact that the accused can attribute a deficiency in his representation to a source external to trial counsel does not make it any more or less likely that he received the type of trial envisioned by the Sixth Amendment, nor does it justify reversal of his conviction absent an actual effect on the trial process or the likelihood of such an effect.”
Cronic, 466 U.S. at 662 n. 31, 104 S.Ct. at 2048 n. 31. We conclude that the Sixth Amendment principle animating Cronic’s presumption of prejudice is the fundamental idea that a defendant must have the actual assistance of counsel at every critical stage of a criminal proceeding for the court’s reliance on the fairness of that proceeding to be justified. The Court in Cronic was not concerned with the cause of counsel’s absence, but rather the effect of such absence on the fairness of the criminal proceeding.
Our recent discussion of Cronic in United States v. Russell, 205 F.3d 768 (5th Cir.2000), supports this interpretation and rejects the State’s excessively narrow reading. On appeal from the denial of his section 2255 motion, Russell urged this Court to presume prejudice under Cronic based on the absence of counsel. Russell, along with 16 co-defendants, was on trial for conspiracy to possess drugs and conspiracy to launder money. Several days *346 into the trial, Russell’s counsel fell ill and was absent for two days of trial as evidence was being presented against Russell’s co-conspirators. Though an attorney for one of Russell’s codefendants represented to the trial court that he had Russell’s permission to act as counsel during the absence of Russell’s own attorney, we concluded that it was unclear from the record whether the district court had accepted counsel’s attempt to represent the petitioner. Russell, 205 F.3d at 769-71. Despite the absence of a clear waiver of counsel, the trial court allowed the trial to continue after instructing the government not to present evidence directly relating to Russell while his counsel was absent.
While we refused to adopt a per se rule that the taking of any evidence at trial in the absence of counsel warrants a presumption of prejudice, we did recognize Cronic’s emphasis on the need to have counsel at every critical stage of a trial to ensure its fairness and reliability. Id. (quoting Cronic, 466 U.S. at 658, 104 S.Ct. at 2047). In characterizing Cronic’s holding, we did not require a showing that the state was responsible for the absence of counsel. Instead, we interpreted Cronic as focusing on the overall fairness of the proceeding, and specifically on whether the absence of counsel was at a critical stage of the trial. We noted that while Cronic did not provide substantial guidance with respect to what parts of a trial are “critical,” the following guidelines could be distilled:
First, there must be a denial of such significance that it makes the adversary process itself unreliable. [Cronic, 466 U.S. at 659, 104 S.Ct. at 2047], Second, the Cronic court makes clear that “only when surrounding circumstances justify a presumption of ineffectiveness can a Sixth Amendment claim be sufficient without inquiry into counsel’s actual performance at trial.”
205 F.3d at 771 (quoting Cronic, 466 U.S. at 662, 104 S.Ct. at 2048). Applying these principles to Russell’s case, we concluded that the adversary process in Russell’s trial was unreliable because Russell’s counsel was not “present to keep the taint of conspiracy from spreading to the client.” Id. at 772. On this basis, we held that counsel’s absence was at a critical stage and presumed prejudice.[6]
*347 As reflected by our discussion in Russell, Cronic presumes prejudice based on the absence of counsel when such absence threatens the overall fairness of a trial. While state responsibility for counsel’s absence may be relevant in examining the fairness of a trial, state action is not and has never been a prerequisite for invoking Cronic to presume prejudice. Reading Cronic to impose such a prerequisite would require shifting the opinion’s emphasis from the fairness and reliability of criminal proceedings to the culpability of a state in distorting the adversarial process. For that reason, we reject the State’s attempt to cast Burdine’s argument as a “new rule” by imposing a state action requirement onto Cronic’s principle that Sixth Amendment prejudice is presumed when a defendant demonstrates the absence of counsel at a critical stage of his criminal proceeding.
The State also attempts to characterize Burdine’s argument as a new rule by limiting the meaning of “critical stage” as that term is used in Cronic and certain cases cited in Cronic. Initially, the State argues that the Supreme Court intended “the Sixth Amendment concept of ‘critical stage’ ” to refer “not to the trial itself, but rather to phases of a criminal proceeding other than the trial.” (emphasis in original). We quickly dispense with this argument. All of the Supreme Court cases that the State cites as supporting its proposition assume that the presentation of evidence against a defendant is a critical stage of a criminal proceeding. See, e.g. Brewer v. Williams, 430 U.S. 387, 398, 97 S.Ct. 1232, 1239, 51 L.Ed.2d 424 (1977). The cases cited by the State simply extend the concept of the trial as a critical stage to other discrete periods; in so extending the concept, they do not question the fact that the trial itself remains a critical stage of any criminal proceeding. Maine v. Moulton, 474 U.S. 159, 170, 106 S.Ct. 477, 484, 88 L.Ed.2d 481 (1985) (noting that the Supreme Court has not limited the right to assistance of counsel to participation at trial, but has not abrogated that right during the trial itself).
The State next argues that because Burdine cannot demonstrate precisely when Cannon slept during his trial, he cannot prove that Cannon slept during critical stages of his criminal proceeding. In this regard, the State asks more of Burdine than the Supreme Court or this Court has ever asked of a defendant attempting to show the absence of counsel during a critical stage of trial. To justify a particular stage as “critical,” the Court has not required the defendant to explain how having counsel would have altered the outcome of his specific case. Rather, the Court has looked to whether “the substantial rights of a defendant may be affected” during that type of proceeding. United States v. Taylor, 933 F.2d 307, 312 (5th Cir.1991) (citing Mempa v. Rhay, 389 U.S. 128, 134, 88 S.Ct. 254, 256, 19 L.Ed.2d 336 (1967); Gideon v. Wainwright, 372 U.S. 335, 342-43, 83 S.Ct. 792, 795-96 (1963)); see also United States v. Gouveia, 467 U.S. 180, 189, 104 S.Ct. 2292, 2298, 81 L.Ed.2d 146 (1984) (suggesting that a proceeding is critical when the accused is confronted by the legal procedural system or the expertise of a state adversary). Thus, in Russell, this Court was satisfied by Russell’s showing that evidence was being adduced by the State against his co-conspirators *348 while Russell’s counsel was absent. See Russell, 205 F.3d at 772. We did not require Russell to demonstrate that the evidence adduced against his co-defendants did in fact have an adverse impact on his own fortune or that the presence of his attorney would have improved his chances of an acquittal.[7] Such a standard would require that the defendant, in effect, prove prejudice in order to receive a presumption of prejudice. That was not the standard announced in Cronic. Therefore, to the extent that the State maintains that application of the term “critical stage” to the facts of Burdine’s case would constitute a new rule, we dismiss the State’s argument. Burdine has alleged and the state court findings support the fact that Burdine’s counsel was unconscious, and hence absent, repeatedly throughout the guilt-innocence phase of Burdine’s trial as evidence was being produced against Bur-dine. That this stage of Burdine’s trial was “critical” was well established in 1987 and is well established today.
In sum, we conclude that Burdine seeks the benefit of a rule well-established at the time that his conviction became final: when a defendant does not have counsel at every critical stage of a criminal proceeding, the court must presume that such egregious deficiency prejudiced the fairness of the trial. Because Burdine does not seek the benefit of a new rule, we need not discuss the various exceptions to Teag-ue. Instead, we turn to whether the merits of Burdine’s case warrant the application of this longstanding rule.

B. Is Presumption of Prejudice Appropriate in Burdine’s Case?

The State purports to accept the state trial court’s findings that defense counsel slept during substantial portions of Burdine’s trial. Nonetheless, the State painstakingly conducts a page-by-page analysis of the trial record in an apparent attempt to demonstrate that counsel was awake during significant portions of the trial.[8] Yet, once we have accepted as pre *349 sumptively correct the state court’s finding that counsel slept “during portions of [Burdine’s] trial on the merits, in particular during the guilt-innocence phase when the State’s solo prosecutor was questioning witnesses and presenting evidence,” there is no need to attempt to further scrutinize the record. See Javor v. United States, 724 F.2d 831, 834 (9th Cir.1984) (holding that “[w]hen a defendant’s attorney is asleep during a substantial portion of his trial, the defendant has not received the legal assistance necessary to defend his interests at trial” and thus, prejudice must be presumed).
The factual findings made during Burdine’s state habeas proceedings demonstrate that Burdine’s counsel was repeatedly asleep, and hence unconscious, as witnesses adverse to Burdine were examined and other evidence against Burdine was introduced. This unconsciousness extended through a not insubstantial portion of the 12 hour and 51 minute trial. Unconscious counsel equates to no counsel at all. Unconscious counsel does not analyze, object, listen or in any way exercise judgment on behalf of a client. As recognized by the Second Circuit, “the buried assumption in our Strickland cases is that counsel is present and conscious to exercise judgment, calculation and instinct, for better or worse. But that is an assumption we cannot make when counsel is unconscious at critical times.” Tippins v. Walker, 77 F.3d 682, 687 (2d Cir.1996).[9] When we have no basis for assuming that counsel exercised judgment on behalf of his client during critical stages of trial, we have insufficient basis for trusting the fairness of that trial and consequently must presume prejudice.
The State suggests that because Cannon was physically present in the courtroom, his dozing constituted a form of performance that should be subjected to prejudice analysis. The State maintains that it is impossible to distinguish between sleeping counsel and other impairments that nevertheless have been subjected to prejudice analysis. We disagree. An unconscious attorney does not, indeed cannot, perform at all. This fact distinguishes the sleeping lawyer from the drunk or drugged one. Even the intoxicated attorney exercises judgment, though perhaps impaired, on behalf of his client at all times during a trial. Yet, the attorney that is unconscious during critical stages of a trial is simply not capable of exercising judgment. The unconscious attorney is in fact no different from an attorney that is physically absent from trial since both are equally unable to exercise judgment on behalf of their clients. Such absence of counsel at a critical stage of a proceeding makes the adversary process unreliable, and thus a presumption of prejudice is warranted pursuant to Cronic.
As in Russell, we decline to adopt a per se rule that any dozing by defense counsel during trial merits a presumption of prejudice. Our holding, that the repeated unconsciousness of Burdine’s counsel through not insubstantial portions of the critical guilt-innocence phase of Bur-dine’s capital murder trial warrants a presumption of prejudice, is limited to the egregious facts found by the state habeas court in this case.[10]
*350 III.
Based on the state court’s findings that have been accepted by all as presumptively correct, we affirm the district court’s grant of federal habeas corpus relief and vacate Burdine’s capital murder conviction. The State is free to retry Burdine for capital murder.[11]
AFFIRMED.

. By granting Burdine’s motion for rehearing en banc, the Court vacated the panel opinion. See 5th Cir. R. 41.3; Leffall v. Dallas Indep. Sch. Dist., 28 F.3d 521, 529 n. 2 (5th Cir.1994).

. Though the state habeas court used slightly different language to describe its factual finding at various points in its opinion, each variation reflects that Cannon slept on multiple occasions during the guilt-innocence phase of Burdine’s trial.

.The State does not argue that Burdine seeks to avail himself of a rule announced after his conviction became final in 1987. Instead, the State maintains that the result Burdine seeks is not compelled or dictated by Supreme Court precedent even today. Since the State does not suggest that Sixth Amendment precedent has changed or developed significantly since 1987, we do not expend considerable energy distinguishing the law as it was in 1987 and the law as it is today. Suffice it to say that the State does not allege any noteworthy developments in Supreme Court doctrine, and we have been unable to discern any independently.

.In addition to the absence of counsel during critical phases of trial, Cronic suggested three other circumstances in which a presumption of prejudice would be required to ensure the fairness of a proceeding: (1) "if counsel entirely fails to subject the prosecution’s case to meaningful adversarial testing;” (2) "when although counsel is available during trial, the likelihood that any lawyer, even a fully competent one, could provide effective assistance is so small that a presumption of prejudice is appropriate without inquiry into the actual conduct of the trial;” and (3) "when counsel labors under an actual conflict of interest.” Cronic, 466 U.S. at 659-60, 662 n. 31, 104 S.Ct. at 2047, 2048 n. 31.

. Even where it is possible to infer a role for an external force, it is by no means clear that this force must be the state, as opposed to something natural, such as illness.

. The State points to language in Strickland suggesting that state action is necessary to justify a presumption of prejudice. See Strickland, 466 U.S. at 692, 104 S.Ct. at 2067. Specifically, the State relies on the following language:
Actual or constructive denial of the assistance of counsel altogether is legally presumed to result in prejudice. So are various kinds of state interference with counsel’s assistance. Prejudice in these circumstances is so likely that case-by-case inquiry into prejudice is not worth the cost. Moreover, such circumstances involve' impairments of the Sixth Amendment right that are easy to identify and, for that reason and because the prosecution is directly responsible, easy for the government to prevent.
Id. (citations omitted). The State maintains that the last sentence assumes state action with respect to any absence of counsel. Yet, we interpret the sentence to relate only to "various kinds of state interference with counsel’s assistance.” At any rate, Strickland certainly does not hold that state action is required to presume prejudice based on absence of counsel. Therefore, the language on which the State relies is dicta and does not undercut the Court’s prior analysis in Cronic.
The State's reliance on our decision in May v. Collins, 948 F.2d 162 (5th Cir.1991), is similarly misplaced. In May, the habeas petitioner did not suggest that his counsel had been absent during critical portions of the proceeding, but instead argued that the Texas death penalty scheme so limited his counsel’s tactical decision making ability as to constitute a constructive denial of counsel. Id. at 166. Thus, our decision in May was concerned not with actual absence of counsel, but instead with instances in which "counsel *347 is prevented from assisting the accused during a critical stage of the proceeding.” Id. While May limited the principle of constructive denial of counsel to cases involving a government rule that “affirmatively forces counsel to make a choice he or she might not otherwise make in the context of a particular case,” that limitation has no bearing on allegations that counsel was absent during critical portions of trial. Id.

. Here, the State attempts to distinguish Russell on the basis that the evidence presented during the absence of counsel in that case was easily identifiable, but in this case, "we cannot determine from the trial transcript or witness testimony at the state evi-dentiary hearing what evidence was being presented, or other activity was taking place, while counsel slept.” In Burdine’s case we have a state court finding that counsel slept "during portions of [Burdine's] trial on the merits, in particular during the guilt-innocence phase when the State’s solo prosecutor was questioning witnesses and presenting evidence.” Although we may not specifically know what evidence was being presented while counsel was unconscious, we know that it was being presented by the State against Burdine. In Russell, pursuant to the district court’s instruction, the government was presenting evidence that directly related to his co-conspirators, not Russell. We recognized that evidence introduced against co-conspirators "inferentially increased the taint of guilt of Russell.” 205 F.3d at 772. The evidence presented while counsel slept at Burdine’s trial at the very least inferentially increased the taint of Burdine’s guilt because he was the only defendant on trial. It would appear a more egregious Sixth Amendment violation to have counsel unconscious while evidence is presented against his client than to have counsel physically absent while evidence is presented against his client's co-conspirators.

. We note that simply because counsel orally responded when addressed during trial does not necessarily indicate that he had been awake and attentive immediately prior to the exchange on the record. At the 1995 state habeas evidentiary hearing, two witnesses testified that, on different occasions during trial, counsel was awakened when the trial court or the prosecutor addressed him. Also, on occasion, Cannon’s response was somewhat delayed because he had been asleep immediately prior to being addressed.

. The Stale, citing a March 1998 district court opinion, suggests that the Second Circuit has backed away from the presumed prejudice rule it recognized in Tippins. Yet, as recently as May 1998, the Second Circuit has confirmed the rule and rationale announced in Tippins. See Morales v. United States, 143 F.3d 94, 97 (2d Cir.1998).

. Based on an extrajudicial statement made by Burdine’s habeas counsel to a news reporter and the fact that Burdine did not testify *350 during the state court habeas proceedings, the dissent has constructed a circuitous chain of inferences culminating in the negative inference that, as a matter of law, Burdine's counsel slept only during unimportant stages of Burdine’s capital murder trial. According to the dissent, this inference alone would defeat Burdine's claim to a presumption of prejudice under Cronic. But the links necessary to support the dissent's chain of mandatory inferences are wholly lacking. And even if we were to assume that the state habeas court could and would have drawn the negative inference proposed by the dissent with respect to the timing of Cannon’s slumber, such analysis would only be relevant to the State’s proposed approach to the application of Cronic, which effectively incorporates the Strickland analysis. The flaws in this approach have been discussed previously. Accordingly, we do not further dwell on the dissent’s reliance on Burdine’s habeas counsel’s extrajudicial statements to deprive Burdine of the presumption of prejudice he seeks based on the absence of his trial counsel.

. Chief Judge Carolyn Dineen King and Judges Patrick E. Higginbotham, W. Eugene Davis, Jacques L. Wiener, Jr., Harold R. De-Moss, Jr.,-Carl E. Stewart, Robert M. Parker, and James L. Dennis join-in this opinion for the court.