**Affirmed and Memorandum Opinion filed December 3, 2019.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-18-00300-CR

---

## ARTHUR CLARENCE JOHNSON, Appellant

## V.

## THE STATE OF TEXAS, Appellee

---

**On Appeal from the 337th District Court
Harris County, Texas
Trial Court Cause No. 1515576**

---

## MEMORANDUM OPINION

Appellant Arthur Clarence Johnson challenges his conviction for continuous sexual abuse of a child contending (1) he was denied effective assistance of counsel "when his attorney came to trial without his hearing aids, could not hear the testimony, and failed to object to damaging hearsay testimony" and (2) the trial court erroneously admitted the testimony of a psychologist "who had not examined the complaining witness and who gave irrelevant improper expert testimony by opining that children can be sexually abused with other people in the same bed." We affirm.

BACKGROUND

Appellant was indicted for continuous sexual abuse of a child in 2016 and a jury trial was held in April 2018. The evidence at trial showed as follows.

Appellant lived with two of the mothers of his children and five to seven of the mothers' children in a warehouse for several months. One mother was his ex-girlfriend, M.S.; she also had four more daughters (including Complainant) from other relationships. Appellant and M.S. lived with Appellant's then-girlfriend, H.K., with whom he had two children. M.S. and H.K. became friends; the ex-girlfriend's daughters developed a strong maternal relationship with H.K., and they considered her to be their second mother.

The warehouse unit in which these eight to ten people lived had room for a king-size and a queen-size bed, couches, a refrigerator, a washer and dryer, and a bathroom. Appellant and H.K. slept in one bed with two of M.S.'s five daughters (including Complainant) while M.S. slept in the other bed close by with three of her daughters. The daughters, including Complainant, rotated sleeping arrangements between the two beds and the three adults. H.K. then became pregnant with Appellant's child.

In October 2015, Complainant made her initial outcry to her mom and Appellant's girlfriend. H.K. called the police and reported Complainant's allegations of assault. About three weeks later, Complainant was interviewed by a forensic interviewer at the Children's Assessment Center and underwent a medical assessment by a child abuse pediatrician in November 2015.

The forensic interviewer, Diop, testified at trial that Complainant disclosed multiple instances of sexual abuse during her interview. Additionally, the child abuse pediatrician Dr. Donaruma testified Complainant told her about numerous

specific instances of sexual abuse she endured at the hands of Appellant and that he showed her pornography. Complainant testified she told the doctor details of her abuse using specific words, such as "tee-tee" and "pee-pee" or "pee part"; Complainant also testified Appellant abused her on more than two occasions, showed her "nasty videos" of "[g]irls and boys doing stuff", and digitally penetrated her after ripping her underwear. Complainant was ten years old at the time of trial and between seven and eight years old when the sexual abuse occurred.

Complainant further testified Appellant touched her mouth with his private part while they were living in the warehouse. This happened while Complainant was in the same bed as H.K. and H.K.'s baby. H.K. did not wake up because she is a very hard sleeper. H.K. agreed that she was a very hard sleeper. Complainant decided to tell H.K. about Appellant's abuse because she "wanted him out of [her] life."

Dr. Thompson, a psychiatrist and the director of therapy and psychological services at the Harris County Children's Assessment Center, testified (over a specific objection to relevance) regarding (1) his work with child sexual abuse survivors and their families and (2) his clinical knowledge of characteristics exhibited by child victims of sexual abuse. He testified many sexually abused children commonly exhibited "[d]epression, anxiety, interpersonal difficulties and sexual acting out behaviors." Dr. Thompson also testified he never interviewed Complainant.

Dr. Thompson testified that "it can be very uncomfortable for a child who has been sexually assaulted to say anything about the assault to anybody," so it is common for child abuse victims to partially disclose various incidents of sexual abuse to different people. He stated "we do commonly see kids abused with other adults around" and although less common, he has seen in clinical practice that children were sexually abused "even with adults in the same bed."

3

After hearing the evidence, a jury convicted Appellant of continuous sexual abuse of a child and the trial court assessed Appellant's punishment at thirty years' confinement. Appellant filed a timely appeal.

## ANALYSIS

## I.      Ineffective Assistance of Counsel

Appellant argues in his first issue he was denied effective assistance of counsel "when his attorney came to trial without his hearing aids, could not hear the testimony, and failed to object to damaging hearsay testimony." Although this allegation appears to facially invoke significant constitutional concerns, such concerns appear to be unwarranted under these facts.

### A.      Standard of Review and Applicable Law

To prevail on a claim of ineffective assistance of counsel, an appellant must show that (1) trial counsel's performance was deficient because it fell below an objective standard of reasonableness; and (2) the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 689 (1984); *Lopez v. State*, 343 S.W.3d 137, 142 (Tex. Crim. App. 2011).

In order to satisfy the first prong, Appellant must prove by a preponderance of the evidence that trial counsel's performance fell below an objective standard of reasonableness under the prevailing professional norms. *Lopez*, 343 S.W.3d at 142. A defendant must overcome a strong presumption that trial counsel's actions fell within the wide range of reasonable and professional assistance. *See id.*; *Garza v. State*, 213 S.W.3d 338, 348 (Tex. Crim. App. 2007). "Before granting relief on a claim that defense counsel failed to do something, we ordinarily require that counsel be afforded the opportunity to outline the reasons for the omission." *Roberts v. State*, 220 S.W.3d 521, 533-34 (Tex. Crim. App. 2007).

4

If counsel's reasons for his conduct do not appear in the record and there is at least the possibility that the conduct could have been grounded in legitimate trial strategy, we will typically defer to counsel's decisions and deny relief on an ineffective assistance claim. *Garza*, 213 S.W.3d at 348. "'It is not sufficient that appellant show, with the benefit of hindsight, that his counsel's actions or omissions during trial were merely of questionable competence.'" *Lopez*, 343 S.W.3d at 142-43 (quoting *Mata v. State*, 226 S.W.3d 425, 430 (Tex. Crim. App. 2007)). To warrant reversal when trial counsel has not been afforded an opportunity to explain his reasons, the challenged conduct must be "'so outrageous that no competent attorney would have engaged in it.'" *Roberts*, 220 S.W.3d at 533-34 (quoting *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005)). Appellant must show that there is a reasonable probability — or a probability sufficient to undermine confidence in the outcome — that the result of the proceeding would have been different but for counsel's alleged errors. *See Lopez*, 343 S.W.3d at 142.

In determining whether counsel was ineffective, we consider the totality of the circumstances of the particular case. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). Any allegation of ineffectiveness must be firmly founded in (and demonstrated by) the record. *Id.*; *see also Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005) ("Direct appeal is usually an inadequate vehicle for raising [an ineffective assistance] claim because the record is generally undeveloped."). Failure to satisfy either prong of the *Strickland* test defeats an ineffective assistance claim. *Strickland*, 466 U.S. at 697; *Nichols v. State*, 494 S.W.3d 854, 857 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd).

## B. Hearing Impairment

Appellant argues he was "functionally denied counsel at a critical stage of trial" because his trial counsel came to trial without his hearing aids and "could not

hear testimony in at least eight instances" during trial. Relying on United States Supreme Court precedent, Appellant argues this operates as a denial of counsel at a critical stage of trial and creates a presumption of prejudice (quoting *United States v. Cronic*, 466 U.S. 648, 659 (1984) (criminal defendants' Sixth Amendment rights are violated "if the accused is denied counsel at a critical stage.")). "[A] defendant is denied counsel not only when his attorney is physically absent from the proceeding, but when he is mentally absent as well, *i.e.*, counsel is asleep, unconscious, or otherwise actually *non compos mentis*." *Ex parte McFarland*, 163 S.W.3d 743, 752 (Tex. Crim. App. 2005) (citing *Cronic*, 466 U.S. at 659). Appellant also cites *Burdine v. Johnson*, 262 F.3d 336, 347 (5th Cir. 2001); he contends that a "counsel who cannot hear equates to no counsel at all", and avers his trial counsel's inability to hear testimony rendered him constructively absent during trial (thereby violating his Sixth Amendment right to counsel).

Appellant cites the following exchange in the record:

[THE STATE:] Okay. I just want to ask you a few more questions, Ms. Diop. We've looked at some of the photos of the forensic interview room. When you were interviewing [Complainant], do you recall what her demeanor was like?

[FORENSIC INTERVIEWER:] Hmm, I do.

[THE STATE:] What was it like?

[FORENSIC INTERVIEWER:] It was — a matter of fact.

[TRIAL COUNSEL]: I'm sorry, your Honor, I have a question. Could she repeat her question. I couldn't hear her.

THE COURT: She's very soft-spoken.

[TRIAL COUNSEL]: I'm sorry. I don't have my hearing aids.

[THE STATE]: I'm sorry, Mr. Fosher. I'll speak up.

THE COURT: The acoustics in here are not very good either so it's hard to hear you.

[THE STATE]: I think it will be better from here. I apologize.

6

This limited exchange reveals the person with the most intimate knowledge and control over that particular courtroom personally believed (1) the acoustics therein were "not very good", (2) that it was "hard to hear" certain people therein, and (3) counsel for the State was "very soft-spoken"; there were no objections to the trial court's express findings. It also reveals trial counsel attempted to compensate for his hearing loss by seeking assistance from the trial court. *See Bermudez v. State*, 471 S.W.3d 572, 575 (Tex. App.—Houston [1st Dist.] 2015, pet. ref'd) ("[A]n attorney with hearing loss is still capable of exercising judgment[,] [a]nd part of his professional judgment is to discern the appropriate method, if any, to compensate for his hearing loss," including lip reading, seeking assistance from the trial court, or using other compensation techniques.). In response, counsel for the State moved to a different location in the courtroom and expressed her belief the new position would accommodate trial counsel's potential disability. Additionally, the record establishes trial counsel (1) objected competently and on various grounds well over fifty times throughout the trial, (2) stopped the testimony of witnesses or questioning by the State several times, (3) asked witnesses to speak up and into the microphone to make sure he heard everything that was said, (4) asked relevant and appropriate follow-up questions on cross-examination and re-direct examination, and (5) made an objection to nuanced bolstering during the State's closing statement. Finally, there is no independent evidence counsel (1) was not attempting to be humorous or self-deprecatingly humble in front of the jury concerning an issue Appellant agrees was of critical importance, (2) suffered from meaningful hearing loss, (3) even possessed (much less required) hearing aids to perform as competent counsel, or (4) actually failed to hear *any* given statement. Trial counsel's actions at trial indicate he heard the State's questioning and statements as well as the witnesses' testimony.

Importantly, trial counsel was not the only person who had difficulties

7

hearing. Numerous times throughout trial, the trial court, the State, and the court reporter stated it was "hard to hear" in the courtroom and asked witnesses to speak up, repeat their testimony, and speak into the microphone. Although these instances have not been collected for us, we are aware of this occurring at least eighteen times throughout the proceedings.

Appellant's reliance on *Burdine* is misplaced. In *Burdine*, the habeas corpus proceedings established defense counsel was "repeatedly asleep, and hence unconscious" during significant portions of trial. *Burdine*, 262 F.3d at 349. The Fifth Circuit held that "[u]nconscious counsel equates to no counsel at all" and "[u]nconscious counsel does not analyze, object, listen or in any way exercise judgment on behalf of a client." *Id*. The court stated "the attorney that is unconscious during critical stages of a trial is simply not capable of exercising judgment" and "is in fact no different from an attorney that is physically absent from trial since both are equally unable to exercise judgment on behalf of their clients." *Id*. The court found "[s]uch absence of counsel at a critical stage of a proceeding makes the adversary process unreliable, and thus a presumption of prejudice is warranted pursuant to *Cronic*." *Id*.

Appellant's trial counsel was neither asleep nor constructively absent. Instead, he took necessary steps to ensure he heard (*inter alia*) both the State and various witnesses at trial despite poor acoustics that cannot in any way be attributed to him or his client. With the notable exception of hearsay, he timely and repeatedly objected throughout trial and earnestly represented his client accused of continuous sexual abuse of a child. No evidence supports Appellant's argument that his trial counsel "could not hear for most of the state's case".

Under the circumstances of this case, we conclude Appellant failed to demonstrate his trial counsel experienced difficulties hearing that rendered him

constructively absent and warranted a presumption of prejudice under *Cronic* and *Burdine*. *See Cronic*, 466 U.S. at 659; *Burdine*, 262 F.3d at 349. Instead, the record before us reveals a single instance of expressed difficulty, an assurance that his difficulties were in no way a fault of his own, and the rectification of said problem by counsel for the State once it became known.

## B.     Hearsay Objection

Appellant contends he was harmed by his trial counsel's failure to object to a portion of forensic interviewer Diop's testimony because it was harmful hearsay.

Diop testified Complainant disclosed during the interview that she had been sexually abused multiple times by the same person. Although Diop testified Complainant was able to provide the timeframe when and the locations where the sexual abuse occurred, she did not testify regarding (1) specifics disclosed to her or (2) the identity of Complainant's alleged abuser. Instead, the State showed Diop photos that were taken during her interview and Diop testified they showed Complainant demonstrating "the layout of the home of where the multiple incidents occurred," multiple specific acts, "her body position," and the abuser's body position.

Assuming *arguendo* both the non-verbal assertions in the photographs and Diop's testimony constitute hearsay without an exception, the record is silent as to trial counsel's motivation for not objecting thereto. Appellant contends his attorney's possible disability in a difficult environment is the cause, but we find no evidence in the record to support this contention; instead, we have already concluded counsel could hear (as evidenced by his objections throughout most of the trial), that his intermittent inability to hear was not his fault, and that he took reasonable steps to accommodate any hearing difficulties he may have experienced. Further, trial counsel has not been given an opportunity to explain why he did not object to the

testimony Appellant now complains of on appeal.

Child abuse pediatrician Dr. Donaruma was scheduled to testify concerning the details of Appellant's abuse (as disclosed to her during Complainant's medical assessment) and counsel presumably knew said testimony was admissible under Texas Rule of Evidence 803(4). *See also Castoreno v. State*, 932 S.W.2d 597, 601-02 (Tex. App.—San Antonio 1996, pet. ref'd). Under these circumstances, counsel could have reasoned it would be best not to draw further attention to Diop's testimony regarding Complainant's disclosure. Appellant does not argue trial counsel was ineffective by not objecting to Dr. Donaruma's testimony and we will defer to counsel's decisions and deny relief on an ineffective assistance claim where there is at least the possibility that the conduct could have been grounded in legitimate trial strategy. *Garza*, 213 S.W.3d at 348. We do not find the challenged conduct "'so outrageous that no competent attorney would have engaged in it.'" *Roberts*, 220 S.W.3d at 533-34 (quoting *Goodspeed*, 187 S.W.3d at 392).

Further, we note that a sound trial strategy may be imperfectly executed and that the right to effective assistance of counsel does not entitle a defendant to errorless or perfect counsel. *See Robertson v. State*, 187 S.W.3d 475, 483 (Tex. Crim. App. 2006). "[I]solated instances in the record reflecting errors of omission or commission do not render counsel's performance ineffective, nor can ineffective assistance of counsel be established by isolating one portion of trial counsel's performance for examination." *McFarland v. State*, 845 S.W.2d 824, 843 (Tex. Crim. App. 1992), *overruled on other grounds by Bingham v. State*, 915 S.W.2d 9 (Tex. Crim. App. 1994). Here, we cannot conclude the record shows trial counsel performed deficiently by failing to object to Diop's testimony.

Even if we concluded trial counsel acted unreasonably, Appellant cannot demonstrate harm because there has been no showing that, but for counsel's failure

to object to some of Diop's testimony, the outcome of the proceeding would have been materially different. Specifically, Appellant has failed to show how Diop's non-specific testimony is harmful in light of specific testimony from Dr. Donaruma. Compared to Dr. Donaruma's specific and descriptive testimony of the abuses Complainant said she endured, we cannot presume the general and more vague testimony by Diop was harmful under the circumstances.

Accordingly, we overrule Appellant's first issue.

## II. Expert Testimony

Appellant argues in his second issue that the trial court erroneously admitted the testimony of Dr. Thompson (a psychologist), despite the fact that he "had not examined [Complainant] and . . . gave irrelevant improper expert testimony by opining that children can be sexually abused with other people in the same bed."

To preserve error for appellate review, a timely and specific objection is required. Tex. R. App. P. 33.1(a)(1)(A). The objecting party must let the trial judge know what he wants, why he thinks he is entitled to it, and do so clearly enough for the judge to understand him at a time when the judge may do something about it. *Clark v. State*, 365 S.W.3d 333, 339 (Tex. Crim. App. 2012). Additionally, a party must object each time the inadmissible evidence is offered or obtain a running objection. *Valle v. State*, 109 S.W.3d 500, 509 (Tex. Crim. App. 2003). Further, a complaint on appeal must comport with the objection made at trial. *See Clark*, 365 S.W.3d at 339. Thus, an appellant fails to preserve error when the trial objection does not comport with the issue raised on appeal. *See Thomas v. State*, 505 S.W.3d 916, 924 (Tex. Crim. App. 2016); *Swain v. State*, 181 S.W.3d 359, 367 (Tex. Crim. App. 2005).

Here, the State called Dr. Thompson to testify. After he described his

education, training, and experience (including almost 18 years working with child abuse victims) the following exchange occurred:

> [THE STATE:]  Okay.  Now, as far as this particular case, have you had an opportunity to counsel or interview or meet the child in this case?
>
> [DR. THOMPSON:]  No.
>
> [THE STATE:]  Okay.  So what would your opinions, in terms of any questions I ask you, what would you rely upon to render any type of opinions in this case?
>
> [DR. THOMPSON:]  My clinical experience, literature on child sexual abuse, just sharing those things with this jury so that they can apply it to this case as they see fit.
>
> [TRIAL COUNSEL]:  Your Honor, we object to his testimony as being irrelevant, since he did not examine the child.
>
> THE COURT: Overruled.

Trial counsel raised no complaint under Texas Rule of Evidence 403 that Dr. Thompson's testimony would be unduly prejudicial; he did not challenge Dr. Thompson's qualifications or the reliability of the science; he did not mention that the expert opinion testimony was improper under Texas Rules of Evidence 702 and 703; he did not complain that Dr. Thompson improperly opined that children can be sexually abused while other people are in the same bed; nor did he object to any of the opinion testimony Dr. Thompson rendered during his testimony.

Appellant complains for the first time on appeal that Dr. Thompson's testimony was improper because he opined "that children can be sexually abused with other people in the same bed."  Appellant mentions Rule 403 for the first time in his appellate brief.  He also states for the first time that "[e]xpert testimony cannot bolster other witness's testimony as to the complaining witness's credibility."

However, a careful review of the record establishes that Appellant failed to preserve the complaints he now asserts on appeal; therefore, Appellant's issue is

waived, and we resolve it against him. *See* Tex. R. App. P. 33.1(a)(1)(A); *Thomas*, 505 S.W.3d at 924; *Clark*, 365 S.W.3d at 339; *Swain*, 181 S.W.3d at 367. Accordingly, we overrule Appellant's second issue.

## CONCLUSION

We affirm the trial court's judgment.

/s/    Meagan Hassan
        Justice

Panel consists of Justices Wise, Jewell, and Hassan.
Do Not Publish — Tex. R. App. 47.2(b)