**UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

_____

**No. 00-20941**
_____

JOHN MAYO,

                                        **Petitioner-Appellant,**

                        **versus**

JANIE COCKRELL, DIRECTOR TEXAS
DEPARTMENT OF CRIMINAL JUSTICE,
INSTITUTIONAL DIVISION,

                                        **Respondent-Appellee.**

_____

Appeal from the United States District Court
for the Southern District of Texas
_____

March 28, 2002

Before JONES, SMITH, and DeMOSS, Circuit Judges.

EDITH H. JONES, Circuit Judge:

        This court granted a certificate of appealability to
permit John Mayo's appeal from a denial of § 2254 habeas relief on
the claim that he was constructively deprived of legal counsel at
a critical stage of his prosecution, the period during which a new
trial could be sought.  Texas courts denied relief on this claim,
as did the federal district court.  The issue before us, pursuant
to AEDPA standards, is whether the state courts' decision "was

contrary to, or involved an unreasonable application of, clearly established Federal Law, as determined by the Supreme Court of the United States . . .," or was based on an unreasonable determination of the facts in light of the state court record. 28 U.S.C. § 2254(d). Mayo rests his claim entirely on <u>United States v. Cronic</u>, 466 U.S. 648, 104 S.Ct. 2039 (1984), and its progeny. Finding no basis to grant relief on these facts under <u>Cronic</u>, we affirm.

## BACKGROUND

Mayo kidnapped, raped and sexually assaulted a Houston, Texas, woman in May 1989. He was convicted in March 1991 of aggravated kidnaping and aggravated sexual assault, and he received sentences of 20 and 50 years' imprisonment, respectively, for those offenses.

The facts pertinent to this case, which we paraphrase, are succinctly reported by the state habeas court:[1]

Jacquelyn Barnes, a veniremember for Mayo's trial, represented on her juror questionnaire that she had never been accused in a criminal case. Before the veniremembers were brought to the courtroom, the presiding judge in the central jury room asked whether they had ever been convicted of any felony or theft.

---

[1] The state court held a hearing on July 24, 1997, and prepared its findings of fact and conclusions of law based on testimony and documentary evidence.

Barnes either responded in the negative or remained silent; otherwise, she would not have accompanied the panel to the courtroom.

Mayo was represented at trial by retained counsel Paul Mewis, assisted by Cynthia Henley. Neither the prosecutor nor defense counsel asked the veniremembers whether they had been convicted of any felony or theft, in reliance on the answers in the jury questionnaires and their knowledge that the veniremembers had already been qualified on this question in the central jury room. Barnes became a juror.

Unbeknownst to the parties and attorneys, Barnes had a final conviction for misdemeanor theft dating from 1977, which was discoverable as a public record in Harris County, Texas. Had Barnes disclosed her conviction during voir dire examination, the attorneys would have challenged her for cause, as she was absolutely disqualified from jury service under Texas law. TEX. CODE CRIM. PROC. ANN. art. 35.19 (1989); Frame v. State, 615 S.W. 2d 766, 769 (Tex. Crim. App. 1981).

Mayo was convicted and sentenced. Mewis's contract provided that his legal representation of Mayo would terminate with the jury's verdict. After sentencing, Mayo indicated his desire to appeal. Because Mewis did not handle appeals, he advised Mayo to hire another lawyer.

3

Mewis took no further action in the case because he assumed that Mayo would hire another lawyer. Neither Mewis nor Henley (as Mewis's assistant) investigated jury misconduct, checked the local criminal records of the jurors, or investigated or filed a motion for new trial.

Mewis did not move to withdraw as counsel because he was unaware that Texas law required him to continue to represent Mayo following conviction until such time as the court permitted him to withdraw or substituted counsel. Ex parte Axel, 757 S.W.2d 369, 373-74 (Tex. Crim. App. 1988).

Nevertheless, when Mewis had not heard from a prospective appellate lawyer after about three weeks, he met with Mayo in jail to determine whether another lawyer had been hired. Mayo said he was indigent. On April 4, 1991, three days before the time expired to file a motion for new trial and notice of appeal, Mewis assured that Mayo was brought to court, that he filed a notice of appeal, and that he signed an indigency affidavit requesting court-appointed appellate counsel. That same day, the court appointed Will Gray as appellate counsel and mailed him notice of the appointment. Gray did not, however, learn of his appointment until the time had expired to file a motion for new trial.

No attorney discovered Barnes's theft conviction in time to file a motion for new trial or to raise the issue on appeal. Had counsel filed a motion for new trial and proven that Barnes was

4

absolutely disqualified from serving as a juror, the trial court would have had to grant a new trial, or the conviction would have been reversed on appeal. Thomas v. State, 796 S.W.2d 196, 197 (Tex. Crim. App. 1990); State v. Holloway, 886 S.W.2d 482, 484 (Tex. App.--Houston [1st Dist.] 1994). Under Texas law, however, Mayo is not entitled to obtain habeas corpus relief on a claim involving a disqualified juror. Thomas, 796 S.W.2d at 199; Ex parte Bronson, 254 S.W.2d 117, 121 (Tex. Crim. App. 1952)

The state habeas court concluded that Mayo "was not denied assistance of counsel during the time for filing a motion for new trial, as Paul Mewis remained attorney of record." The Texas Court of Criminal Appeals denied Mayo's application for habeas corpus relief without written order on the findings of the trial court. The federal district court denied relief under § 2254, and this appeal followed after a COA was granted.

## DISCUSSION

This case turns on whether the state courts' conclusion that Mayo was not denied the assistance of counsel during the period for filing a new trial motion was an unreasonable application of Federal law, as established by the Supreme Court, or was based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d).

Mayo's argument begins with the proposition that criminal defendants are constitutionally entitled to effective assistance of

5

counsel at every "critical stage" of prosecution and through the conclusion of direct appeal.  <u>Strickland v. Washington</u>, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064 (1984); <u>Evitts v. Lucey</u>, 469 U.S. 387, 396, 105 S.Ct. 830, 836 (1985).  A defendant whose attorney provides no meaningful assistance may, however, be constructively denied the assistance of counsel.  <u>United States v. Cronic</u>, 466 U.S. 648, 659, 104 S.Ct. 2039, 2047 (1984).  In Mayo's view, his lawyer's failure to research or file a motion for new trial was the equivalent of denying him counsel for the purpose of challenging Ms. Barnes's qualifications as a juror.

The initial problem with this argument is that, from the standpoint of AEDPA, its conclusion does not necessarily follow from its premises.  Few precedents exist explaining whether the period for filing a motion for new trial is a "critical stage" of prosecution to which the right to counsel attaches.  The Texas Court of Criminal Appeals, for instance, expressly withheld ruling on that issue, although lower Texas courts have described the post-trial period as "critical."  <u>Compare</u> <u>Prudhomme v. State</u>, 28 S.W.3d 114, 121 (Tex. App. -- Texarkana 2000), <u>with</u> <u>Smith v. State</u>, 17 S.W.3d 660, 663 n.3 (Tex. Crim. App. 2000), <u>and</u> <u>Oldham v. State</u>, 977 S.W.2d 354, 360-61 (Tex. Crim. App. 1998).  Several federal courts of appeals have held that there is no constitutional right to counsel for post-appeal motions for new trial.  <u>United States v. Tajeddini</u>, 945 F.2d 458, 470 (1st Cir. 1991), <u>abrogated on other</u>

6

grounds by <u>Roe v. Flores-Ortega</u>, 528 U.S. 470, 120 S.Ct. 1029 (2000); <u>United States v. Lee</u>, 513 F.2d 423, 424 (D.C. Cir. 1975); <u>United States v. Birrell</u>, 482 F.2d 890, 892 (2d Cir. 1973). But three federal courts of appeals have held, on particular facts, that the motion for new trial phase is a critical stage of the prosecution. <u>Kitchen v. United States</u>, 227 F.3d 1014, 1018-19 (7th Cir. 2000); <u>Robinson v. Norris</u>, 60 F.3d 457, 459-60 (8th Cir. 1995); <u>Menefield v. Borg</u>, 881 F.2d 696, 699 (9th Cir. 1989). The district court here seized on the absence of "clearly established Federal law, as determined by the Supreme Court . . . .," and concluded that the period for filing a motion for new trial is not clearly a critical phase; hence, the state courts did not unreasonably reject Mayo's habeas claim.[2]

Unfortunately for Mayo, his position succeeds only if the right to counsel clearly and fully attaches to the post-trial, pre-appeal phase of prosecution. But it is unnecessary, in resolving this appeal, to render such a broad decision.[3] Instead, we focus

---

[2]    Mayo proceeded in state court and in this court solely on the theory that he was denied counsel pursuant to <u>Cronic</u> and not, under <u>Strickland</u>, that his attorney was constitutionally ineffective.

[3]    The broad question has no clearcut practical answer. Having counsel during the motion for new trial phase may or may not be necessary to preserving the defendant's rights to a fair trial and effective appeal. Investigating juror misconduct, for instance, may be, but is not necessarily, feasible only after the jury has been discharged. Another type of post-trial motion may challenge the effectiveness of trial counsel, but such a claim may better be raised in a habeas corpus petition, after the results of the alleged errors have been ascertained on appeal. Other types of claims may justify the discretionary grant of a new trial but need not be raised in that fashion in order to preserve them for appeal. Hence, unlike phases of the prosecution during which attorney

7

on the state court finding that Mayo was not denied counsel during the post-trial phase. This finding is not legally or factually unreasonable. Under Texas law, Mewis was bound to represent Mayo until the trial court permitted him to withdraw or appointed a new attorney.[4] That Mewis was unaware of his legal responsibility does

representation has been deemed "critical" by the Supreme Court -- arraignment; gaps in trial that afford the opportunities for consultation with the defendant; the introduction of evidence pertinent to the defendant; direct appeal -- the post-trial, pre-appeal phase seems, in the absence of a specific claim, to demand representation by counsel at a minimum only for filing a timely notice of appeal. (Mewis fulfilled his responsibility to Mayo for this purpose.)

Accordingly, to grant Mayo's petition would extend the Supreme Court's decision in Cronic. The Court explained in Cronic that a criminal defendant, even though formally represented by counsel, may suffer an actual or constructive denial of representation in three circumstances: where counsel is totally absent or is prevented from assisting the accused during a critical stage; where counsel has a conflict of interest; and where counsel entirely fails to subject the prosecution's case to meaningful adversarial testing. The circumstances of denial must justify a presumption of prejudice. Cronic, 466 U.S. at 659, 104 S.Ct. at 2046. In Burdine, this court held that when defense counsel slept for "not insubstantial periods of time" during the guilt phase of the capital murder trial, the defendant was constructively denied counsel. Burdine v. Johnson, 262 F.3d 336, 341 (5th Cir. 2001) (en banc). Nothing in the majority opinion in Burdine speaks to a Sixth Amendment claim arising in the post-trial, pre-appeal phase of a non-capital prosecution. Further, as has been shown, a priori judgment about the necessity of counsel during that phase is impossible. Under the terms of Cronic or Burdine, then, Mayo's broad claim fails for lack of a demonstration that prejudice is so likely to occur if counsel is "absent" during this phase as to render individual consideration of claims unnecessary. Since Cronic as presently understood does not support a holding that the right to counsel inevitably continues during the post-trial phase of prosecution, the Teague doctrine would pose a bar to its extension here. Teague v. Lane, 489 U.S. 288, 109 S.Ct. 1060 (1989). Even in Burdine, the court, conscious of Teague, went out of its way both to explain that it articulated no "new rule" and to limit the decision to its specific facts. Burdine, 262 F.3d at 349. Burdine offers no hope that other habeas defendants may succeed in obtaining case-specific relief under Cronic or Teague.

[4] Mayo's argument proves too much by conflating the attorney's alleged error or misjudgment with "denial" or "absence" of counsel under Cronic. Cronic went out of its way to stress that "only when circumstances justify a presumption of ineffectiveness can a Sixth Amendment claim be sufficient without inquiry into counsel's performance at trial." Cronic, 466 U.S. at 662, 104 S.Ct. at 2048. The alleged error here was not so temporally tied to the post-trial, pre-appeal phase as to justify a presumption of ineffectiveness at that stage. Cases relied on by Mayo are thus not on point because the denial of counsel and attorney incompetence on appeal, respectively, in those cases inevitably undermined the

8

not transform an error into the "denial" or "absence" of counsel. Mewis in fact represented his client post-trial by taking steps to ensure the appointment of appellate counsel.

The only asserted flaw in Mewis's legal representation was his failure to investigate the criminal records of Mayo's jury, to unearth a thirteen-year-old misdemeanor conviction of one juror, and to use that technicality to obtain a mistrial or new trial. For two reasons, this omission has no constitutional significance.

First, even if Mewis should have investigated the jurors' criminal histories, the investigation need not have awaited the outcome of trial. Mewis could have questioned the jurors on the subject during voir dire exam. Indeed, the voir dire examination provided the best opportunity to reveal disqualifying characteristics. Moreover, Mewis, armed with copies of the juror questionnaires, could have begun an investigation of the seated jurors by means of outside sources as soon as trial commenced. While the deadline for filing a motion for new trial fixes a completion date under Texas procedure for such an investigation, it does not constrain the initiation of inquiries into jurors' criminal records. There is no necessary connection between Mewis's alleged oversight and the post-trial period. This lack of

_____

defendant's right to a first appeal. <u>See</u> <u>Blankenship v. Johnson</u>, 118 F.3d 312 (5th Cir. 1997); <u>Lombard v. Lynaugh</u>, 868 F.2d 1475 (5th Cir. 1989).

9

connection is irreconcilable with any Cronic claim regarding that period.

Second, the facts demonstrate why Mayo declines to characterize his claim as resting on the Strickland test for constitutionally deficient legal representation. A Strickland claim arises only if the attorney's error falls outside the bounds of professional reasonableness. Strickland, 466 U.S. at 688, 104 S.Ct. at 2065. Mewis did not question prospective jurors about their criminal histories because he relied on pre-qualification for that precise point. Pre-qualification took place by means of written questionnaires and inquiries by the judge who conducts juror screening in the Houston courts' central jury room. It was not professionally unreasonable to rely on this dual screening mechanism. Surely the best evidence of the reasonableness of Mewis's conduct lies in the fact that the prosecutor, who had as much to lose as Mayo had to gain from the belated identification of an unqualified juror, also relied on the pre-screening techniques. If Mewis's actions in failing to ask veniremembers about possible criminal records were not professionally unreasonable, it follows that the failure to conduct post-trial investigation and file a motion for new trial cannot have been deficient.[5]

---

[5] That Mayo's conduct did not violate Strickland reinforces the conclusion that no basis for a presumption of prejudice – the prerequisite of a denial of counsel under Cronic – exists here.

Our conclusion may be stated narrowly. Whether or not the right to counsel attaches for some purposes during the post-trial, pre-appeal phase of the prosecution, Mayo was not constructively denied the assistance of counsel for purposes of filing a new trial motion solely to assert the disqualification of a juror, where (a) the disqualification might have been discovered earlier, and (b) Mayo's attorney could reasonably rely on Harris County's juror pre-screening procedures. The state courts did not unreasonably apply clearly established Federal law or reach unreasonable findings of fact in denying Mayo relief from his conviction.[6]

The judgment of the district court is **AFFIRMED**.

---

[6] The dissent finds unreasonable the state's conclusion that Mayo was represented by counsel during the post-trial, pre-appeal phase. The dissent bases its view on attorney Mewis's affidavit revealing his ignorance of the requirements of Texas law. Under the dissent's alchemy, it is hard to see how the line between Cronic and Strickland errors could be drawn, with the result that petitioners' heavy burdens of proving Strickland deficiency and prejudice would be lightened to the Cronic standard of "absence" and presumed prejudice. Were the dissent's position correct, the magnitude of Mayo's windfall here would be striking, since Mewis's conduct, which did not rise to the level of deficient representation under Strickland, would transmute into a habeas-demanding Cronic error.

11

DeMOSS, Circuit Judge, dissenting:


The majority concludes, as did the state habeas court, that John Mayo was not deprived of the assistance of counsel during the post-trial, pre-appeal time for filing a motion for new trial, despite the existence of affidavits from his attorneys attesting that they in fact did not represent Mayo during this period. Because I believe this conclusion to be unreasonable in light of the evidence presented in the State habeas proceeding, I respectfully dissent. Further, because I conclude that the post-trial, pre-appeal time for filing a motion for new trial is a "critical stage" in the proceedings, I would grant Mayo's request for habeas relief.


## I.   ASSISTANCE OF COUNSEL

The majority concludes that the state habeas court's finding that Mayo was not denied counsel during the post-trial, pre-appeal time for filing a motion for new trial was "not legally or factually unreasonable."[7]  It reasons:

---

[7]  The state habeas court's entire analysis consisted of one sentence: "The applicant was not denied assistance of counsel during the time for filing a motion for new trial, as Paul Mewis remained attorney of record."

Under Texas law, Mewis was bound to represent Mayo until the trial court permitted him to withdraw or appointed a new attorney. That Mewis was unaware of his legal responsibility does not transform an error into the "denial" or "absence" of counsel. Mewis in fact represented his client post-trial by taking steps to ensure the appointment of appellate counsel.

I have no quarrel with the majority's recognition that, as a matter of Texas law, trial counsel remains under a duty to continue representing his or her client until the court permits a withdrawal.[8] I am also cognizant that, under Texas law, "[w]hen a motion for new trial is not filed in a case, the rebuttable presumption is that it was considered by the appellant and rejected," and that the appellant carries the burden to "rebut the presumption that the appellant was represented by counsel." *Oldham v. State*, 977 S.W.2d 354, 363 (Tex. Crim. App. 1998).

However, "being under a duty to represent" and actually performing that duty are horses of a different color. Contrary to

---

[8] This principle has been long recognized by the Texas Court of Criminal Appeals, *e.g., Harrison v. State*, 516 S.W.2d 192, 192 (Tex. Crim. App. 1974), and is now codified in the Texas Code of Criminal Procedure. *See*. TEX. CODE CRIM. PROC. art. 26.04(j)(2).

13

the majority's view, I believe it indisputable in this case that Mayo *did* rebut the presumption that he was represented by counsel during the time for filing a motion for new trial. Mayo presented two affidavits in support of his claim—one from Mewis, his trial attorney, and one from Gray, his appointed appellate attorney. Mewis's affidavit stated:

> On March 8, 1991, after Mr. Mayo was sentenced, he said that he wanted to appeal. Because I do not handle appeals, I told him to hire another lawyer. I assumed that he would do so. I took no further action on his case.
>
> When I had not heard from another lawyer after about three weeks, I went to see Mr. Mayo in jail to determine whether he had hired counsel for the appeal. He said that he could not afford to do so.
>
> On April 4, 1991, three days before the time expired to file a motion for new trial and notice of appeal, I had Mr. Mayo brought to court. I filed a notice of appeal and had him sign an affidavit of indigency requesting the appointment of counsel on appeal. The court appointed Will Gray.
>
> After Mr. Mayo was sentenced, I did not provide him with additional legal assistance because I did not intend to represent him on appeal. For all practical purposes, he did not have the assistance of counsel from the time that he was sentenced until Mr. Gray learned of the court appointment. As a result, no lawyer investigated the possible grounds for a motion for new trial.

Gray's affidavit stated:

> The coordinator of the 263rd District Court customarily forwarded me a copy of the combination order appointing counsel and pauper's oath by

14

United States Mail. . . . If the order were mailed on April 4, 1991, the earliest I could have received it would have been April 6, 1991.

I was not able to speak with the Appellant or file a motion for new trial by April 7, 1991.

In my view, these affidavits effectively rebut the presumption that Mayo was represented by counsel during the time period for filing a motion for new trial.[9] Mayo claims he was without representation; both Mayo's attorneys have sworn under oath that Mayo was without representation; and no motion for new trial was actually filed. I cannot conceive what more conclusive proof we could require Mayo to present to demonstrate he was in fact without representation.

In *Ward v. State*, the Texas Court of Criminal Appeals emphasized that the "continuity of representation from trial to appeal is necessary to correct the ambiguity of representation which all too often follows a conviction." 740 S.W.2d 794, 797 (Tex. Crim. App. 1987). As the court explained, this is the precise reason for the rule requiring counsel to formally withdraw

---

[9] This evidence distinguishes this case from those where the Texas Court of Criminal Appeals has rejected similar claims. *See Smith v. State*, 17 S.W.3d 660, 663 (Tex. Crim. App. 2000) ("We therefore assume, *absent a showing in the record to the contrary*, that appellant was adequately counseled regarding his right to file a motion for new trial.") (emphasis added); *Oldham*, 977 S.W.2d at 363 ("There is nothing in the record to suggest that the attorney did not discuss the merits of a motion for a new trial with the appellant, which the appellant rejected.").

15

from representation. *Id*. & n.6. By failing to preform his statutory duty to formally withdraw from representing Mayo, Mewis subjected Mayo to this "ambiguity of representation," leaving Mayo without an attorney to counsel him or investigate grounds for filing a motion for new trial, and depriving the trial court of notice that it was necessary to appoint new counsel.

Because both Mayo's attorneys disclaim representing him during the post-trial, pre-appeal period for filing a motion for new trial, and because, in fact, no motion for new trial was filed, I would hold that Mayo has demonstrated that he was without representation during that period. The state habeas court's conclusion that Mayo was represented is "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). Because the majority holds otherwise, I respectfully dissent.

## II. CRITICAL STAGE

As the majority notes, before prejudice in this case can be presumed, Mayo must also show that the period he was without counsel was a "critical stage" of the proceedings. *United States v. Cronic*, 466 U.S. 648, 659 (1984). The state habeas courts did not consider this issue. The panel majority likewise declined to reach this issue because its conclusion that Mayo had

16

representation is dispositive of Mayo's appeal.  Nonetheless, the majority opines, in dicta, that the time period for filing a motion for new trial is not a critical period under *Cronic*.  I disagree.

It is well settled that a defendant is constitutionally entitled to the assistance of counsel at every critical stage of the proceedings.  *E.g., id.*; *Michigan v. Jackson*, 475 U.S. 625, 629-30 (1986); *United States v. Wade*, 388 U.S. 218, 224-25 (1967); *White v. Maryland*, 373 U.S. 59, 60 (1963).  Under the test articulated by the Supreme Court, whether a particular time period is a critical stage turns on an assessment of whether, at the time in question, "the accused required aid in coping with legal problems or assistance in meeting his adversary." *United State v. Ash*, 413 U.S. 300, 313 (1973).  Stated another way, critical stages of the prosecution include all parts of the prosecution implicating substantial rights of the accused.  *Mempa v. Rhay*, 389 U.S. 128, 134 (1967).

While the Supreme Court has not considered precisely this issue, *every* federal circuit court to address the question has concluded that  the post-trial, pre-appeal time period for filing a motion for new trial is a critical stage.[10]  *See, e.g., Kitchen*

---

[10]   As the majority notes, several federal courts have held that there is no constitutional right to counsel for *post-appeal* motions for new trial that are merely collateral attacks.  *See, e.g., United States v. Tajeddini*, 945 F.2d 458, 470 (1st Cir.

17

*v. United States*, 227 F.3d 1014, 1019 (7th Cir. 2000); *Williams v. Turpin*, 87 F.3d 1204, 1210 n.5 (11th Cir. 1996); *Robinson v. Norris*, 60 F.3d 457, 460 (8th Cir. 1995); *Menefield v. Borg*, 881 F.2d 696, 699 (9th Cir. 1989). And at least two other circuit courts, without expressly mentioning motions for new trial, have held that "the hiatus between the termination of trial and the beginning of an appeal" is a critical stage. *Baker v. Kaiser*, 929 F.2d 1495,1499 (10th Cir. 1991); *Nelson v. Peyton*, 415 F.2d 1154, 1157 (4th Cir. 1969).

Each of these circuits looked to the effect of a motion for new trial in the particular state at issue. Relying on principles articulated by the Supreme Court, each court ultimately concluded that this time period, under the relevant state law, qualified as a critical stage. Thus, while I find these cases instructive, I recognize that the proper focus here is on whether a defendant's substantive rights are affected during the post-trial, pre-appeal time period for filing a motion for new trial under Texas law. *See Hamilton v. Alabama*, 368 U.S. 52, 53 (1961).

In Texas, Rule 21 of the Texas Rules of Appellate Procedure governs motions for new trial. Under this rule, a motion for new

---

1991), *overruled in part on other grounds by Roe v. Flores-Ortega*, 528 U.S. 470 (2000). However, it cites no cases, and I have found none, holding that the post-trial, *pre-appeal* time period for filing a motion for new trial is not a critical stage.

18

trial is a prerequisite to points raised on appeal "only when necessary to adduce facts not in the record." TEX. R. APP. PROC. 21.

The Texas Court of Criminal Appeals has never squarely addressed whether the time period for filing a post-trial, pre-appeal motion for new trial is a critical stage. It has held that a defendant is entitled to counsel at a *hearing* on a motion for new trial. *Trevino v. State*, 565 S.W.2d 938, 940 (Tex. Crim. App. 1978). However, the two times it has been asked to consider whether the time for filing a motion for new trial was a critical stage, it has not reached the question. Instead, both times it concluded, as a threshold matter, that the defendant had failed to demonstrate that he or she was actually without counsel during this period. *Smith v. State*, 17 S.W.3d 660, 663 (Tex. Crim. App. 2000) ("We hold that appellant has failed to overcome the presumption that he was adequately represented by counsel during the time for filing a motion for new trial."); *Oldham*, 977 S.W.2d at 361 ("[T]he appellant has failed to show that she was denied counsel during the time limit for filing a motion for new trial.").

Nonetheless, *every* Texas court of appeals to consider the issue has concluded that, in Texas, the post-trial, pre-appeal time for filing a motion for new trial is a "critical stage." *See, e.g., Prudhomme v. State*, 28 S.W.3d 114, 119 (Tex. App.—Texarkana 2000, order); *Massingill v. State*, 8 S.W.3d 733, 736 (Tex.

19

App.—Austin 1999, no pet.); *Hanson v. State*, 11 S.W.3d 285, 288 (Tex. App.—Houston [14th Dist.] 1999, pet. ref'd); *Burnett v, State*, 959 S.W.2d 652, 656 (Tex. App.—Houston [1st Dist.] 1997, pet. ref'd). These courts all begin their analysis with the recognition that whether a particular stage is critical turns on an assessment of the usefulness of counsel to the accused at that time. *See Ash*, 413 U.S. at 313; *Upton v. State*, 853 S.W.2d 548, 553 (Tex. Crim. App. 1993). And several of these courts thoroughly explained their conclusion that, under Texas law, the time period at issue in this case *does* affect the substantive rights of the accused:

> The importance of counsel to a defendant immediately after conviction is recognized in both case law and statute. As previously discussed, an attorney's responsibilities to his client do not end with conviction. . . .
>
> A defendant "must comply with a myriad of procedural rules in order to perfect a meaningful appeal." While a motion for new trial is not a prerequisite to appeal in every case, for a meaningful appeal of some issues a defendant must prepare, file, present, and obtain a hearing on a proper motion for new trial in order to adduce facts not otherwise shown by the record. It is no more reasonable to require a defendant to perform these tasks without the assistance of counsel than it is to require him to represent himself at a new trial hearing.

*Massingill*, 8 S.W.3d at 736 (citations omitted).

> We find it to be indisputable that counsel can be useful in coping with legal problems in preparing, filing, presenting, and obtaining a hearing on a

20

proper motion for new trial, because the process of preserving error with a motion for new trial is governed by a myriad of rules and can be a rather arduous task. . . . We also find it to be beyond dispute that a motion for new trial can be an extremely important tool for presenting an appeal. A motion for new trial is generally not a prerequisite to an appeal, but it can be indispensable for a meaningful appeal of issues which are reliant on facts outside the record.

. . . .

If a hearing on a motion for a new trial is a critical stage [as held by the Texas Court of Criminal Appeals in *Trevino*], then logic dictates that the time period for filing the motion is also a critical stage of the proceedings.

*Prudhomme*, 28 S.W.3d at 118-19 (citations and alterations omitted).

In sum, although the United States Supreme Court and the Texas Court of Criminal Appeals have never considered this precise issue, every federal circuit court and Texas state court to do so has relied on settled Supreme Court precedent to hold this time period is "critical." I am persuaded by the Texas courts of appeals' reasoning that, even though a motion for new trial is not *always* a prerequisite to an appeal in Texas, it undoubtedly can affect a defendant's substantial rights. Accordingly, I would hold that the post-trial, pre-appeal time period for filing a motion for new trial is a critical stage of the proceedings during which a defendant is constitutionally entitled to effective assistance of counsel. Moreover, based on settled Supreme Court precedent, because Mayo has shown he was denied the assistance of counsel

21

during a critical stage of his trial, he is relieved of the burden to show specific prejudice. *Cronic*, 466 U.S. at 659 n.25 ("The Court has uniformly found constitutional error without any showing of prejudice when counsel was either totally absent, or prevented from assisting the accused during a critical stage of the proceedings."); Prejudice is presumed.[11] *Id*.

Finally, I disagree with the majority's conclusion that holding the post-trial, pre-appeal time period for filing a motion for new trial to be a critical stage would represent an impermissible extension of *Cronic* under *Teague v. Lane*. Stated simply*, Teague* teaches us that a federal court reviewing a habeas petition cannot apply a new constitutional rule of law in granting relief to the defendant. 489 U.S. 288, 310 (1989). In *Burdine v. Johnson*, we considered the scope of *Cronic*'s rule that mandates a presumption of prejudice when a defendant's counsel is absent during a critical stage of the proceedings. 262 F.3d 336, 345 (5th Cir. 2001). There our *en banc* Court stated that *Cronic* identified the "fundamental idea" under the Sixth Amendment that a "defendant must have the actual assistance of counsel at every critical stage

---

[11] For this reason, the majority's discussion about the merits of Mayo's motion for new trial should be irrelevant to our analysis. Contrary to the majority's suggestion, a defendant is not required to prove prejudice as a prerequisite to his or her entitlement to a presumption of prejudice.

22

of a criminal proceeding for the court's reliance on the fairness of that proceeding to be justified."  *Id.*

Because I am convinced that the time period for filing a post-trial, pre-appeal motion for new trial fits comfortably within long-established Supreme Court precedent, I do not believe Mayo's claim is *Teague* barred.  This is true even though the Supreme Court has never expressly designated this particular stage as critical. *See* **Williams v. Taylor**, 529 U.S. 362, 382 (2000) ("[A]s our precedent interpreting **Teague** has demonstrated, rules of law may be sufficiently clear for habeas purposes even when they are expressed in terms of a generalized standard rather than as a bright-line rule.") (Stevens, J., concurring).

Teague teaches us that a rule is "new" only if it "breaks new ground or imposes a new obligation on the States or the Federal Government." **Teague**, 489 U.S. at 301.  Here, the Supreme Court has clearly articulated standards for this Court to use in determining whether a stage is critical.  Simply applying those standards does not amount to application of a "new rule."

## III. CONCLUSION

I would hold that the state courts' conclusion that Mayo was represented by counsel during the time for filing a post-trial, pre-appeal motion for new trial is unreasonable in light of the

23

evidence presented in the State court proceedings.  Because the majority holds otherwise, I respectfully dissent.  Further, because I believe that Mayo was without counsel during a critical stage of the proceedings, I would reverse the district court's judgment and remand to the state district court to permit Mayo to file an out-of-time motion for new trial under the state laws existing at the time of his conviction.