JOURNAL ENTRY and OPINION
{¶ 1} The state of Ohio (the state) appeals from the trial court's decision to not advise defendant Jose Rosado that he would be subject to postrelease control after his term of imprisonment ended. Additionally, Rosado cross-appeals the merits of his convictions, claiming ineffective assistance of counsel and that his conviction was based on insufficient evidence and was against the manifest weight of the evidence. After reviewing the facts of the case and pertinent law, we affirm Rosado's convictions but vacate his sentence and remand the matter for resentencing.
 I. {¶ 2} In July 1997, Rosado was indicted for drug related offenses stemming from the Cleveland Police Department's discovery that Rosado and two co-defendants, Marcos Betances (Betances) and Romaine Hill (Hill), were trafficking drugs. The police learned of this activity through confidential reliable informants, surveillance and searching two properties. The two properties searched were 3723 West 41 Street, an apartment leased by a Ronamez Betances, where Marcos Betances lived, and 3423 Clark Avenue, which was leased by Romaine Hill and her daughter. Police seized 337 grams of powder cocaine and 113.53 grams of crack cocaine, both stored in a safe, drug paraphernalia, Rosado's personal papers and a money order receipt from the Clark Avenue property. A firearm, ammunition and additional personal papers belonging to Rosado were recovered from the West 41 Street address. Police arrested Rosado, Betances and Hill's daughter and recovered a pager, an electronic scale and sandwich bags from the vehicle they were driving at the time. The keys taken from the ignition of this vehicle were chained together with a key for the West 41 Street apartment and a key to the safe at the Clark Avenue apartment. Police also recovered $396 in cash from Rosado at the time of his arrest.
 {¶ 3} Rosado was not apprehended for trial until approximately six years later, in 2003. On September 24, 2003, a jury found Rosado guilty of two counts of possession of drugs with major drug offender specifications in violation of R.C.2925.11, first- and second-degree felonies, and one count of possessing criminal tools in violation of R.C. 2923.24, a fifth-degree felony. The court sentenced appellant to a mandatory ten-year prison term on the first-degree felony, five years on the second-degree felony and 12 months on the fifth-degree felony, all to be served concurrently. At the sentencing hearing, the court stated the following:
"According to the law, [the offense you were found guilty of] carries with it an extraordinary sentence that even exceeds my disdain for what was done here, but I mean it's not my job to do that. The legislature has spoken and there's nothing I can do about it. So you have to suffer the consequences as a result of involving yourself in this kind of activity.
* * *
"The Court would find that it would amount to cruelty to the defendant to impose any more sentence than the 10-year mandatory sentence.
* * *
"Okay. The sentence is a ten-year sentence. I am not including the matter of post-release control in the entry. That should be noted. No post-release control because the sentence is so lengthy that I must impose today."
 {¶ 4} The prosecutor told the court that postrelease control is mandatory for a first-degree felony. However, the court responded by stating, "I don't even know that. I don't know. I'll look at it." On October 3, 2003, the court issued a sentencing journal entry that stated, "Post release control is a part of this prison sentence for the maximum period allowed for the above felony(s) under R.C. 2967.28."
 II. {¶ 5} The state raises two assignments of error, as follows:
"A trial court errs in failing to advise a criminal defendant of post-release [sic] control pursuant to R.C. 2967.28(B) and (C), since the court has no discretion to do otherwise. A trial court may not exempt a criminal defendant from the mandatory, statutory requirements of the post-release [sic] control statutes."
"The exemption of criminal defendants from mandatory sentencing provisions violates the Due Process Clauses of the United States and Ohio Constitutions."
 {¶ 6} As these assignments of error are interrelated, we will discuss them together. The outcome of these two assigned errors is controlled by the Ohio Supreme Court's ruling in State v.Jordan, 104 Ohio St.3d 21, 2004-Ohio-6085, which was pending at the time the state filed its appeal. The Ohio Supreme Court held in Jordan that:
"The plain language of R.C. 2929.14(F) and 2967.28 evinces the intent of the General Assembly not only to make all incarcerated felons subject to mandatory or discretionary postrelease control but also to require all sentencing trial courts in this state to include postrelease control as part of the sentence for every incarcerated offender."
Id. at 26.
 {¶ 7} The court went on to say, "Because a trial court has a statutory duty to provide notice of postrelease control at the sentencing hearing, any sentence imposed without such notification is contrary to law." Id. at 27. Pursuant to R.C.2953.08(G)(2), if an appellate court finds that an offender's sentence is contrary to law, the appellate court "may increase, reduce, or otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand the matter to the sentencing court for resentencing." In determining the disposition of Jordan, the court held the following:
"Accordingly, when a trial court fails to notify an offender about postrelease control at the sentencing hearing but incorporates that notice into its journal entry imposing sentence, it fails to comply with the mandatory provisions of R.C. 2929.19(B)(3)(c) and (d), and, therefore, the sentence must be vacated and the matter remanded to the trial court for resentencing."
Id. at 28.
 {¶ 8} We note that Rosado's brief discussed only his assignments of error as cross-appellant. His brief did not address any arguments, for or against, the state's position that he be resentenced. In following Jordan, we conclude that the state's first assignment of error has merit, and we remand this case to the trial court for the limited purpose of advising Rosado that postrelease control is a part of his sentence, in accordance with R.C. 2967.28.
 III. {¶ 9} In Rosado's first assignment of error as a cross-appellant, he argues that "defense counsel was ineffective thereby denying cross appellant effective assistance of counsel as guaranteed by the Sixth Amendment to the Untied [sic] States Constitution." Specifically, Rosado argues that defense counsel was ineffective for two reasons: first, because he fell asleep at one point during trial and second, because he continued to represent Rosado despite a conflict of interest.
 {¶ 10} In order to substantiate a claim of ineffective assistance of counsel, an appellant must demonstrate that 1) the performance of defense counsel was seriously flawed and deficient, and 2) the result of appellant's trial or legal proceeding would have been different had defense counsel provided proper representation. Strickland v. Washington (1984),466 U.S. 668; State v. Brooks (1986), 25 Ohio St.3d 144. In Statev. Bradley, the Ohio Supreme Court truncated this standard, holding that reviewing courts need not examine counsel's performance if appellant fails to prove the second prong of prejudicial effect. State v. Bradley (1989), 42 Ohio St.3d. "The object of an ineffectiveness claim is not to grade counsel's performance." Id. at 142.
 {¶ 11} In response to Rosado's claim of ineffective assistance of counsel, the state argues that defense counsel actively and effectively represented Rosado throughout the trial. Rosado's claim that his attorney was sleeping is supported by the following excerpt of the trial transcript, which occurred when co-defendant Hill was on the stand testifying about sending a money order to an unidentified recipient in New York:
"Q. And why did you do that?
"A. Because Jose had asked me to.
"Q. And do you recall how much you sent?
"[ATTORNEY]: I'm going to object to her response, Judge. I'm sorry, I was asleep when she said that.
"THE COURT: That she wired money?
"[ATTORNEY]: And the question was: Why did she do that?
"THE COURT: You want to explain your objection?
"[ATTORNEY]: I'll withdraw it, Judge.
"THE COURT: Okay."[1]
 {¶ 12} Rosado argues that State v. Cronic (1984),466 U.S. 648 applies to defense counsel falling asleep. In footnote 25 ofCronic, the United States Supreme Court stated that "[t]he Court has uniformly found constitutional error without any showing of prejudice when counsel was either totally absent, or prevented from assisting the accused during a critical stage of the proceeding." Id. at 659. As further support for his proposition that a sleeping lawyer is ineffective assistance of counsel per se, Rosado points to Burdine v. Johnson (5th Cir. 2001), 262 F.3d 336, where defense counsel was unconscious repeatedly throughout trial. The Burdine court held that "[u]nconscious counsel equates to no counsel at all. Unconscious counsel does not analyze, object, listen or in any way exercise judgment on behalf of a client." Id. at 349. Rosado relies on theBurdine analysis that sleeping on the job is presumptively ineffective; he does not present any evidence for us to review regarding how defense counsel's falling asleep prejudiced him at trial.
 {¶ 13} In the instant case, the state argues that, according to the record, although Rosado's attorney fell asleep during trial once, he, nevertheless, maintained the ability to be effective because he repeated to the court the question he supposedly missed while sleeping. The state also observes that counsel was effective by: discussing a plea offer with Rosado, succeeding on pretrial motions to keep out unfavorable evidence, making 32 objections at trial, cross-examining and recross-examining witnesses, clarifying evidence, successfully arguing a Crim.R. 29 motion for acquittal on count three of the indictment, polling the jury and successfully requesting the minimum sentence for Rosado.
 {¶ 14} While we cannot condone counsel admitting on the record to falling asleep during the state's case against his client, we find that the isolated incident on the record is not enough, in and of itself, to show ineffective assistance of counsel per se. Accord, Holley v. Massie (1995),100 Ohio App.3d 760 (holding that a cause of action for legal malpractice could not go forward based on counsel falling asleep twice during trial, absent evidence that the jury was affected by this conduct). Moreover, we note that defendant's appellate counsel did not try this case. Thus, we have no verification of what trial counsel meant when he said he was asleep. "Being asleep" is a common metaphor for "being inattentive" or "slow in a response" as opposed to the literal meaning of sleeping. Second, what trial counsel said immediately after this comment demonstrates that counsel must have been awake because he repeated what had just transpired.
 {¶ 15} In any event, because Rosado failed to show how the result of his legal proceeding would have differed if defense counsel had not fallen asleep, we cannot conclude that this incident amounted to ineffective assistance of counsel.
 {¶ 16} Rosado also argues that counsel was ineffective by representing him while also "laboring under a conflict of interest." Rosado alleges that the conflict of interest in the instant case is that at the time of Rosado's trial, defense counsel was under indictment for drug related charges in the same court in which he was trying Rosado's case.
 {¶ 17} In State v. Gillard (1992), 64 Ohio St.3d 304, 311, the Ohio Supreme Court held:
"Where a trial court knows or reasonably should know of an attorney's possible conflict of interest in the representation of a person charged with a crime, the trial court has an affirmative duty to inquire whether a conflict of interest actually exists. The duty to inquire arises not only from the general principles of fundamental fairness, but from the principle that where there is a right to counsel, there is a correlative right to representation free from conflicts of interest. Where a trial court breaches its affirmative duty to inquire, a criminal defendant's rights to counsel and to a fair trial are impermissibly imperiled and prejudice or `adverse effect' will be presumed."
(Internal citations omitted.)
 {¶ 18} Given this, in addressing this portion of Rosado's first assignment of error, we must answer two questions. First, did a conflict of interest exist, and second, if so, did the court make the appropriate inquiry?
 {¶ 19} As support for Rosado's argument that defense counsel's facing criminal charges amounted to a conflict of interest, Rosado cites United States v. Levy (2nd Cir. 1994),25 F.3d 146. In Levy, the Second Circuit Court of Appeals stated that defense counsel's "prosecution on unrelated criminal charges by the same office prosecuting Levy presents further conflict concerns. [Defense counsel] may have believed he had an interest in tempering his defense of Levy in order to curry favor with the prosecution, perhaps fearing that a spirited defense of Levy would prompt the government to pursue the case against [him] with greater vigor."
 {¶ 20} Id. at 156. However, in Levy, myriad other concerns existed, including multiple representation and defense counsel facing criminal charges stemming directly from representing Levy. The totality of the circumstances in Levy led the court to hold that a conflict of interest existed, resulting in ineffective assistance of counsel. We decline to interpret Levy, which is persuasive rather than controlling authority, to mean that anytime an attorney is facing criminal charges, he creates a conflict of interest by representing a client in the same jurisdiction. A careful review of Ohio law shows no cases directly on point with Rosado's argument that a conflict of interest existed in his case.
In State v. Sanchez (May 4, 2000), Cuyahoga App. No. 76027, we held that a "reviewing court cannot presume that the mere possibility of a conflict of interest resulted in ineffective assistance of counsel. A possible conflict of interest is simply insufficient to challenge a criminal conviction." See, also,Cuyler v. Sullivan (1980), 446 U.S. 335; State v. Keith
(1997), 79 Ohio St.3d 514; State v. Manross (1988),40 Ohio St.3d 180.
 {¶ 21} Assuming, however, for argument's sake, that Rosado could show a conflict of interest existed as a matter of law, the next step is to analyze the court's inquiry into the situation. Before trial began, the following colloquy took place:
"THE COURT: One other note of business here before we begin with the jury selection. Mr. Rosado, it's probably a good idea for us to put this on the record, your knowledge of the fact that [defense counsel] has some charges pending against him at the present time. Are you aware of that?
THE INTERPRETER: Yeah, I saw it in the newspaper. So I am aware of that.[2]
THE COURT: You of course then still wish to continue with him as your attorney?
THE INTERPRETER: Yes. It's not an inconvenience."[3]
 {¶ 22} A criminal defendant has the right to employ his or her own chosen counsel. Additionally, a trial court has substantial latitude in determining the existence and waiver of an actual or potential conflict of interest. See, e.g., Wheat v.United States (1988), 486 U.S. 153; State v. Keenan (1998),81 Ohio St.3d 133. In the instant case, we find the court's questioning to be a satisfactory inquiry into a possible conflict of interest, and we find Rosado's responses to be a valid waiver of the right to conflict-free counsel. Given that 1) Rosado cannot show an actual conflict of interest existed, 2) the court made a sua sponte inquiry into whether Rosado knew defense counsel faced criminal charges, and 3) Rosado voluntarily decided to continue with defense counsel's representation, Rosado's first assignment of error is overruled.
 IV. {¶ 23} In Rosado's second assignment of error, he argues that "cross appellant's conviction was based on insufficient evidence."
When reviewing sufficiency of the evidence, an appellate court must determine "[w]hether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Jenks (1991),61 Ohio St.3d 259.
 {¶ 24} Rosado was convicted of two counts of possession of drugs and one count of possession of criminal tools. Specifically, the jury found that Rosado possessed powder cocaine, crack cocaine, a microwave oven, a scale, baggies, a vehicle and money. R.C. 2925.01(K) states that possession "means having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found."
 {¶ 25} Rosado argues that he was not on the lease of either property, he was not found with drugs at the time of his arrest, and Betances testified that Rosado was not involved in the drug enterprise. The state, on the other hand, argues that Hill testified that Rosado had a key and access to the apartment where the drugs were found, and a key and access to the safe where the drugs were kept. Hill also testified that she saw Rosado and Betances cooking cocaine into crack in her apartment, and that Rosado asked her to send money to an unidentified source in New York, where the cocaine originated. Cleveland police officers testified that confidential reliable informants identified Betances and a man named Jose as drug traffickers. Furthermore, police observed Rosado and Betances traveling together and going into and out of both apartments in question numerous times. Rosado's personal papers were found in Hill's apartment where the drugs were kept. Additionally, Betances read into evidence letters he wrote to Hill after his arrest, which referred to Rosado's involvement in transporting, storing and dealing large amounts of cocaine from New York. Although much of this evidence is circumstantial, when looked at in a light favorable to the state, the essential elements of possession of drugs and criminal tools have been proven beyond a reasonable doubt. See State v.Soto (Oct. 4, 1990), Cuyahoga App. No. 57301 (holding that "readily usable drugs in close proximity to an accused may constitute sufficient circumstantial evidence to support a finding of constructive possession"). Accordingly, Rosado's second assignment of error is overruled.
 V. {¶ 26} In his third and final assignment of error, Rosado argues that "cross appellant's conviction is against the manifest weight of the evidence."
 {¶ 27} Specifically, Rosado argues that he was convicted six years after the date of the alleged offenses, solely on the testimony of two co-defendants whose testimony was inherently unreliable. However, the state argues that the length of time between arrest and trial does not automatically make testimony unreliable. Additionally, the state argues that Hill's testimony was credible and that other circumstantial evidence, such as the police officers' testimony, supports Rosado's convictions.
 {¶ 28} The proper test for an appellate court reviewing a manifest weight of the evidence claim is as follows:
"The appellate court sits as the `thirteenth juror' and, reviewing the entire record, weighs all the reasonable inferences, considers the credibility of witnesses and determines whether, in resolving conflicts in evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."
State v. Thompkins (1997), 78 Ohio St.3d 380, 387.
 {¶ 29} In the instant case, both Betances and Hill received reduced sentences for their involvement in the drug related offenses in exchange for testimony against Rosado. Hill stated on the record that she promised to testify at trial, not that she promised to incriminate Rosado, as Rosado suggests. Hill's promise does not taint her testimony. Betances first testified that Rosado had no involvement with the drugs in question. However, Betances then read into evidence letters he wrote to Hill shortly after he pled guilty in 1997. These letters referred to the following: Rosado was using Hill by storing the drugs in her apartment; Rosado was not willing to go to prison, because he was not caught with drugs in his possession; Rosado would remain Hill's boyfriend if Hill and Betances "take the fall"; the situation Hill and her daughter were in was Rosado and Betances' fault; and on August 10, 1997, Rosado "finally accepted responsibility in this ordeal." It was within the province of the jury whether to believe or to not believe Betances' testimony. Furthermore, because Betances' initial testimony was inconsistent with what he wrote in the letters, it was up to the jury to decide when Betances was telling the truth. "[T]he jury is free to believe all, part, or none of the testimony of each witness who appears before it." State v. Nichols (1993),85 Ohio App.3d 65, 76.
 {¶ 30} Given the amount of circumstantial evidence the state presented against Rosado and the credibility of the witnesses, we cannot say that the jury lost its way in convicting Rosado of possession of drugs and criminal tools. Rosado's final assignment of error is overruled.
Conviction affirmed, sentence vacated and remanded for sentencing.
It is ordered that the parties bear their own costs herein taxed.
This court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for resentencing.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Dyke, P.J., and Karpinski, J., concur.
[1] Tr. 170.
[2] Rosado's native language is Spanish. As such, he used an interpreter throughout the lower court proceedings.
[3] Tr. at 39.