[Cite as *State v. Santorella*, 2018-Ohio-274.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 105475**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## JOHN SANTORELLA

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-16-609742-C

**BEFORE:** Blackmon, J., E.T. Gallagher, P.J., and Stewart, J.

**RELEASED AND JOURNALIZED:** January 25, 2018

**ATTORNEY FOR APPELLANT**

Joseph V. Pagano
P.O. Box 16869
Rocky River, Ohio 44116


**ATTORNEYS FOR APPELLEE**

Michael C. O'Malley
Cuyahoga County Prosecutor

By: Eben McNair
Assistant County Prosecutor
The Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113

PATRICIA ANN BLACKMON, J.:

{¶1} John Santorella ("Santorella") appeals from his conviction for robbery, theft, and assault. He assigns the following errors for our review:

I. Appellant's convictions were not supported by sufficient evidence and the trial court erred by denying his motion for acquittal.

II. The convictions were against the manifest weight of the evidence.

III. The trial court erred by ordering restitution without determining the amount that was actually owed.

{¶2} Having reviewed the record and pertinent law, we affirm. The apposite facts follow.

{¶3} Santorella and two codefendants, Christine Hostick ("Hostick") and Gregory Dassel ("Dassel") were charged in a seven-count indictment in connection with the July 2016 robbery and assault of a man who responded to an ad on Craigslist. As is relevant herein, Santorella was charged with aggravated robbery, three counts of robbery, theft, theft from an elderly individual, and assault. Santorella waived his right to a jury trial, and the case against him proceeded to a bench trial on December 14, 2016.[1]

{¶4} The victim testified that he met Hostick through a Craigslist ad. He had gone to her home on prior occasions and paid her for sex. At around midnight at the time of the incident, Hostick began texting the victim from a different phone number, and

---

[1] Dassel pled guilty to one count of robbery and was sentenced to nine months of imprisonment. Hostick pled guilty to one count of robbery and was sentenced to 18 months of community control sanctions.

instructed him to park a few houses away from her home. After the victim parked his car as instructed, a man in a hooded sweatshirt ran up to him and said, "I got a knife. Give me your money." The victim pulled about $100 from his pocket and threw it at the man, but the man threatened him with the knife, and began reaching into the victim's pockets. As the victim tried to move away, the man struck him in the head with a shiny object, causing him to fall. The victim sustained a cut on his face and injuries to his knees, and the assailant fled with his cell phone, bank card, and money.

{¶5} The victim believed that the robbery had been a set-up involving Hostick, and he reported it to the Euclid Police. He identified Hostick from a photo array, but could not identify the man in the sweatshirt.

{¶6} Euclid Police Detective Brett Buchs ("Det. Buchs") and detectives with the narcotics unit subsequently conducted a search of Hostick's home. As a result of this search, police recovered drug paraphernalia and property that did not belong to Hostick. When the police questioned Hostick in connection with the drug-related search on her home, she stated that she and her boyfriend, Dassel, had previously scammed her other Craigslist customers out of money in order to support their drug habits. During these scams, Hostick would plan to meet a customer, and during the meeting, Dassel would suddenly appear, armed with a baseball bat, and demand money. Hostick also admitted that she was with Dassel immediately before he robbed a couple during a separate incident in Lake County. However, Santorella was not involved in these other incidents.

**{¶7}** With regard to the instant matter, Hostick testified that she, Dassel, and Santorella take drugs together. On the night of the attack, Hostick, Dassel, and Santorella used crack and heroin "all day." They began to discuss the victim, and Santorella asked Hostick if the victim carries much cash. Hostick replied that he does, so Santorella asked if they could set him up and rob him because Santorella needed money to pay the rent at the hotel where he was staying, and also wanted to buy crack. They formed a plan to have the victim walk a portion of the way to Hostick's house, while they watched and waited in Dassel's car. When the victim was near, Santorella, who was armed with a knife, got out to confront him. A few minutes later, Santorella returned to the car with money. Santorella reportedly stated that the victim "put up a little bit of an argument and he had to punch him in the face." He stated that he did not use his knife. Hostick and Dassel got half of the money, which they used for drugs, and Santorella kept the other half.

**{¶8}** Dassel testified that it was the "first time [Dassel] ever did anything like this," however, he admitted that he has convictions for theft and domestic violence. He also admitted that he had told police that he and Hostick "would steal from [Hostick's] escorts or Johns that would come to her house." He did not implicate Santorella in any of these other crimes.

**{¶9}** With regard to the instant matter, Dassel stated that he met Santorella through Santorella's former girlfriend, and that after a day of doing drugs together, he, Hostick, and Santorella planned to rob the victim. Dassel testified that Dassel's

recollection was "foggy," but he stated that when the victim arrived, Santorella got out of Dassel's car and hid a few houses away. Santorella returned about five minutes later with money and a cell phone. Santorella told them that he yelled at the victim to give him the money and then hit him. He subsequently identified Santorella from a photo array, but he refused to sign the array. He maintained that during trial, Santorella told him to "stop snitching."

{¶10} Euclid Police Detective Greg Costello ("Det. Costello") testified that at the outset of his interview, Santorella already knew that the questioning involved an incident with Hostick and Dassel. Santorella then asked about the date of the incident, and before Det. Costello could reply, Santorella maintained that he did not meet Hostick and Dassel until late August 2016. Det. Costello informed Santorella that his dates were incorrect because Hostick and Dassel have been in jail since the middle of August 2016. At that point, Santorella acknowledged that he had actually met them in July 2016. Det. Costello also learned through Santorella's girlfriend, Samantha Diamond ("Diamond"), that Santorella had rented a motel room using a false name.

{¶11} Santorella testified on his own behalf and stated that he had been living in Cleveland for approximately three months prior to his arrest. During his arrest, he learned that the police were investigating a robbery involving Hostick. He stated that he met Hostick and Dassel through Diamond, who used drugs with them, but stopped seeing them after Diamond got off of drugs. He denied communicating with Dassel during trial.

{¶12} The trial court found Santorella guilty of one of the robbery charges, both theft charges, and assault, and acquitted him of the remaining charges. The court then merged all counts into the robbery charge, and sentenced Santorella to two years of imprisonment and three years of post-release control sanctions. The court also ordered Santorella to pay $1,242 in restitution to the victim.

## Sufficiency of the Evidence

{¶13} In his first assigned error, Santorella argues that the trial court erred in denying his Crim.R. 29(A) motion for acquittal because there is insufficient evidence linking him to the offenses. He notes that the victim identified only Hostick and Dassel in connection with the robbery. Additionally, he also argues that the testimony from Hostick and Dassel is insufficient due to their drug issues, insufficient memory of the events, and history of similar offenses occurring before they met Santorella.

{¶14} Crim.R. 29(A), which governs motions for acquittal, states:

> The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses.

{¶15} "Pursuant to Criminal Rule 29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt." *State v. Bridgeman*, 55 Ohio St.2d 261, 381 N.E.2d 184 (1978), syllabus.

**{¶16}** R.C. 2911.02(A), robbery, states: "No person, in attempting or committing a theft offense or in fleeing immediately after the attempt or offense, shall do any of the following: (2) Inflict, attempt to inflict, or threaten to inflict physical harm on another."

**{¶17}** "Where sufficient credible evidence exists for the trier of fact to conclude that a defendant is guilty, even if such evidence is based solely on the testimony of a co-defendant, the guilty verdict must be affirmed." *State v. Chaney*, 8th Dist. Cuyahoga No. 66115, 1994 Ohio App. LEXIS 3615 (Aug. 18, 1994), citing *State v. Zahn*, 8th Dist. Cuyahoga No. 59121, 1991 Ohio App. LEXIS 4977 (Oct. 17, 1991). *See also State v. Garcia*, 8th Dist. Cuyahoga No. 67858, 1995 Ohio App. LEXIS 3467 (Aug. 24, 1995). *Accord State v. Rosado*, 8th Dist. Cuyahoga No. 83694, 2005-Ohio-6626, ¶ 25 (finding sufficient evidence where two co-defendants testified against the defendant).

**{¶18}** Based upon our review of the evidence adduced at trial, we find a rational trier of fact could have found the essential elements of robbery proven beyond a reasonable doubt. The state presented testimony from Hostick and Dassel that implicated Santorella in the planning and carrying out of the attack, which, even when viewed with grave suspicion, could be accepted by a rational trier of fact. The record demonstrates that the victim was told before this meeting to park away from Hostick's house, and this tends to support the testimony regarding the plan to attack him as he walked. A different phone number was also used to contact the victim. Hostick and Dassel both testified that Santorella was involved in the planning of the robbery, and that he was the assailant who robbed the victim. Hostick testified that Santorella had a knife, although she

acknowledged that she did not see it in connection with the incident. Dassel testified that after the group planned the robbery, Santorella exited the car then returned approximately five minutes later with a cell phone, and cash, and told the group that he had to hit the victim. Additionally, Det. Costello testified that Santorella knew that the police were seeking information about an incident involving Hostick and Dassel before Det. Costello provided him with this information. According to Det. Costello, Santorella also gave shifting dates as to when he met Hostick and Dassel, first claiming to have met them in late August 2016, or after the robbery, then admitting that he met them in July.

{¶19} In accordance with the foregoing, the first assigned error is without merit.

## Manifest Weight of the Evidence

{¶20} In the second assigned error, Santorella argues that the trial court lost its way in convicting him in the instant case because no credible evidence links him to the offenses.

{¶21} In examining a challenge to the manifest weight of the evidence supporting a conviction, this court weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541. The discretionary power to grant a new trial

should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.  *Id.*

{¶22}   In conducting its review, the court remains mindful that the credibility of the witnesses and the weight to be given the evidence are primarily for the trier of fact to assess.  *State v. Bradley*, 8th Dist. Cuyahoga No. 97333, 2012-Ohio-2765, ¶ 14, citing *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus.

{¶23}   In this matter, the testimony demonstrates that Hostick, Dassel, and Santorella planned to rob the victim after he parked his car near Hostick's home. Hostick contacted the victim using a different telephone number, and instructed him to park away from Hostick's house.  Hostick and Dassel both testified that Santorella was involved in the planning of the robbery, and that he was the assailant.  He left the car to confront the victim and returned approximately five minutes later with money and the victim's cell phone.  They acknowledged their ongoing pattern of "scamming" Hostick's Craigslist customers but they stated that these other offenses did not involve Santorella. Additionally, Det. Costello testified that Santorella knew that the police were seeking information about an incident involving Hostick and Dassel before Det. Costello informed him of the details of his investigation. He then provided untrue and shifting dates regarding the date when he met Hostick and Dassel.  Reviewing the record in its entirety, we cannot say that the trial court lost its way in resolving conflicts in the evidence and convicting him in this matter.

{¶24} Santorella insists, however, that the verdict is against the manifest weight of the evidence because Hostick and Dassel were motivated to lie in this matter in order to obtain favorable plea agreements in this matter. This claim was repeatedly raised during trial and was ultimately rejected by the trial court. Further, both witnesses testified to their other offenses and stated that these other acts did not involve Santorella. Additionally, their accounts varied, including Hostick not recalling Santorella returning with the victim's cell phone and Dassel not seeing Santorella with a knife, and this suggests lack of coordination or fabrication of a lie.

{¶25} In accordance with the foregoing, the second assigned error is without merit.

## Restitution

{¶26} In his third assigned error, Santorella argues that the trial court erred by ordering him to pay $1,242 in restitution because the victim said that his phone, $450.00 in cash, and a credit card were taken but no charges were

made on the credit card.

{¶27} This court reviews orders of restitution for an abuse of discretion. *State v. Pollard,* 8th Dist. Cuyahoga No. 97166, 2012-Ohio-1196, ¶ 7; *State v. Lalain*, 8th Dist. Cuyahoga No. 95857, 2011-Ohio-4813, ¶ 9, citing *State v. Marbury*, 104 Ohio App.3d 179, 661 N.E.2d 271 (8th Dist.1995).

{¶28} Pursuant to R.C. 2929.18(A)(1), the trial court is vested with discretion to impose financial sanctions including restitution when it imposes sentence. Under that statute,

If the court imposes restitution, the court may base the amount of restitution it orders on an amount recommended by the victim, the offender, a presentence investigation report, estimates or receipts indicating the cost of repairing or replacing property, and other information, provided that the amount the court orders as restitution shall not exceed the amount of the economic loss suffered by the victim as a direct and proximate result of the commission of the offense. If the court decides to impose restitution, the court shall hold a hearing on restitution if the offender, victim, or survivor disputes the amount.

*Id.*

**{¶29}** Prior to ordering restitution, "a sentencing court must engage in a 'due process ascertainment that the amount of restitution bears a reasonable relationship to the loss suffered.'" *State v. McLaurin*, 8th Dist. Cuyahoga No. 103068, 2016-Ohio-933, ¶ 13, quoting *State v. Borders*, 12th Dist. Clermont No. CA2004-12-101, 2005-Ohio-4339, ¶ 36. "The court must determine the amount of restitution to a reasonable degree of certainty, ensuring that the amount is supported by competent, credible evidence." *McLaurin* at ¶ 13, citing *State v. Warner*, 55 Ohio St.3d 31, 69, 564 N.E.2d 18 (1990). However, the amount of restitution may be established where the victim testifies to the value of the loss but does not have a receipt. *State v. Walls*, 8th Dist. Cuyahoga No. 100801, 2013-Ohio-411, ¶ 5; *State v. Griffin*, 6th Dist. Lucas No. L-11-1283, 2013-Ohio-411, ¶ 45. The *Walls* court stated:

The court could find the purchaser's testimony was competent and credible evidence supporting the economic detriment suffered by the victim. While a receipt or appraisal may have been superior evidence of the ring's value, there were no heightened evidentiary standards required to prove the amount of loss. We presume that an owner of property has special knowledge of the value of that property and is qualified to express an opinion concerning it.

*Id.*

**{¶30}** The evidence in this matter demonstrated that the victim was robbed of $450 in cash, his bank card, and his cell phone, which according to the victim, was recently purchased for $750 or $800. We conclude that this is competent, credible evidence of the victim's economic loss and sufficiently supports the $1,240 restitution amount, which was not disputed by Santorella below. Accordingly, we find no abuse of discretion herein.

**{¶31}** The third assignment of error is without merit.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

PATRICIA ANN BLACKMON, JUDGE

EILEEN T. GALLAGHER, P.J., and
MELODY J. STEWART, J., CONCUR