TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-12-00062-CV






Heather Lockwood, Appellant


v.


Texas Department of Family and Protective Services, Appellee






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 345TH JUDICIAL DISTRICT

NO. D-1-FM-10-004136, HONORABLE DARLENE BYRNE, JUDGE PRESIDING





M E M O R A N D U M O P I N I O N


 Appellant Heather Lockwood appeals a final order terminating her parental
relationship with her son, J.A. On appeal, Lockwood alleges that (1) the evidence is legally and
factually insufficient to support the trial court's findings that grounds exist to terminate the
parent-child relationship and that termination of her parental rights is in the child's best interest, and
(2) appointed trial counsel provided ineffective assistance because she was not present at trial. See
Tex. Fam. Code Ann. § 161.001(1)(O), (2) (West Supp. 2011). (1) We will reverse and remand for
further proceedings because the mediated settlement agreement admitted at trial is not binding and
because Lockwood was deprived of effective assistance of counsel at trial. See Tex. Fam. Code Ann.
§ 153.0071(d) (West 2008) (prescribing requirements for binding mediated settlement agreement
in suits relating to conservatorship, possession, and access to children); In re M.S., 115 S.W.3d 534,
544 (Tex. 2003) (applying effective-assistance-of-counsel requirement in parental-termination
cases); see also Strickland v. Washington, 466 U.S. 668, 687 (1984) (establishing
effective-assistance-of-counsel standard of review); United States v. Cronic, 466 U.S. 648, 658-59
(1984) (holding that ineffective assistance of counsel is presumed to be harmful in some cases).


FACTUAL AND PROCEDURAL BACKGROUND

 The Texas Department of Family and Protective Services ("the Department") took
custody of Lockwood's son, J.A., in July 2010, while he was residing with his biological father,
Jesus Arguijo III. At the time, the Department was investigating allegations that both Arguijo and
his wife (J.A.'s step-mother) had abused other children living with them, including one incident that
J.A. may have witnessed. The Department was appointed J.A.'s temporary managing conservator,
and the trial court periodically issued orders establishing requirements for Lockwood and Arguijo
to regain custody.

 In December 2011, the parties, their attorneys, J.A.'s court-appointed representatives,
and J.A.'s paternal grandparents participated in a mediated settlement conference. See Tex. Fam.
Code Ann. § 153.0071 (providing alternative dispute resolution procedures in child-custody cases). 
Lockwood herself was not present at the settlement conference, but apparently participated
telephonically; all of the other participants appeared in person. The settlement conference
culminated in a mediated settlement agreement ("MSA") in which J.A.'s father agreed to execute
an irrevocable affidavit relinquishing his parental rights. The MSA also included a stipulation that
clear and convincing evidence established that Lockwood failed to comply with the terms of the
service plan established by the Department and the trial court and that termination of her parental
rights was in J.A.'s best interest. See Tex. Fam. Code Ann. § 161.001(1)(O) (providing grounds for
terminating parental rights if court orders not followed), (2) (requiring that termination of parental
rights be in child's best interest) (West Supp. 2011). Other provisions in the MSA waived the right
to a jury trial and set the case for a final hearing the following day. The MSA was signed by Arguijo,
the Department's representatives, J.A.'s representatives, Arguijo's attorney, and Lockwood's
attorney. It is undisputed, however, that Lockwood did not personally sign the MSA. In fact, the
signature line over Lockwood's name is blank, and neither her attorney nor anyone else purported
to sign the agreement on Lockwood's behalf or with her permission.

 In accordance with the MSA's terms, the case proceeded to a bench trial before an
associate judge the next day. See id. § 201.015(a) (West 2008) (authorizing referral of proceedings
to associate judge). Neither Lockwood nor her attorney was present at the final hearing, and no
person purporting to represent Lockwood entered an appearance. Although the trial judge was
advised that Lockwood's attorney was not present, the trial proceeded. The MSA and Arguijo's
affidavit of relinquishment were admitted into evidence without objection. The court took judicial
notice of its file, specifically the court's prior orders. In addition, the Department called
two witnesses--the case supervisor and J.A.'s guardian ad litem--to establish both that Lockwood
failed to comply with the provisions of the court's orders establishing the actions necessary for her
to regain custody and that termination of her parental rights was in J.A.'s best interest. At the
conclusion of the trial, the judge stated on the record, "Then I will adopt basically what was agreed
to in the mediated settlement agreement and name the [D]epartment non-parent sole managing
conservator of [J.A.]."

 The final judgment, which was signed by the referring judge the same day as the trial,
includes findings and conclusions that (1) there is clear and convincing evidence to terminate
Lockwood's parental rights under section 161.001(1)(O), (2) of the family code, and (2) the MSA
is irrevocable. The MSA's terms are expressly incorporated into the final judgment, which
Lockwood's attorney signed "approved as to form."

 On appeal, Lockwood asserts that (1) the MSA is unenforceable and revocable
because she did not sign it and therefore it is no evidence supporting the trial court's findings, (2) the
additional evidence offered at trial is legally and factually insufficient to support termination of her
parental rights, and (3) she was deprived of the effective assistance of counsel because she was
unrepresented at the final hearing.


DISCUSSION

 The Department's case at trial relied in large part on stipulations in the MSA that
there were grounds to terminate Lockwood's relationship with J.A. and that termination of her
parental rights was in J.A.'s best interest. See id. § 161.001(1)(O), (2). At the conclusion of the trial,
the judge indicated that the MSA was a significant, if not determinative, factor in the decision to
terminate Lockwood's parental rights. On appeal, Lockwood principally contends that the trial court
erred in terminating her parental rights based on the stipulations in the MSA because the absence of
her signature constitutes a material deviation from the statutory requirements for mediated settlement
agreements in suits affecting the parent-child relationship. See id. § 153.0071(d)(2). She further
asserts that the additional evidence offered at trial was insufficient to support termination of her
parental rights, and even if it was sufficient, the outcome of the trial was tainted by her attorney's
failure to appear and subject the Department's case to meaningful adversarial testing. The attorney
ad litem representing J.A. concurs with Lockwood. The Department contends, however, that the
MSA was enforceable at trial notwithstanding the absence of Lockwood's signature because there
is a rebuttable presumption that an attorney retained for litigation has actual authority to enter
into a settlement on behalf of a client. See e.g., Kettrick v. Coles, No. 01-10-00855-CV,
2011 WL 3820941, at *8 (Tex. App.--Houston [1st Dist.] Aug. 25, 2011, no pet.) (mem. op.); City
of Roanoke v. Town of Westlake, 111 S.W.3d 617, 629 (Tex. App.--Fort Worth 2003, pet. denied);
Ebner v. First State Bank, 27 S.W.3d 287, 300 (Tex. App.--Austin 2000, pet. denied). The
Department further asserts that Lockwood's attorney's representation as a whole was effective
regardless of whether the attorney appeared at the final hearing. 

 We hold that (1) the MSA does not comply with section 153.0071(d) of the Texas
Family Code, which prescribes the requirements for binding and irrevocable mediated settlement
agreements in suits affecting the parent-child relationship, and (2) the Department's reliance on the
MSA and the absence of Lockwood's counsel at trial so skewed the presentation of the merits of the
case that we should remand the cause to the trial court in the interest of justice without regard to
whether the additional evidence admitted at trial would otherwise be legally and factually sufficient
to support the trial court's judgment.


Mediated Settlement Agreement

 Texas has a policy of encouraging "the peaceable resolution of disputes," particularly
in disputes involving the parent-child relationship. Tex. Civ. Prac. & Rem. Code Ann. § 154.002
(West 2011); Brooks v. Brooks, 257 S.W.3d 418, 421 (Tex. App.--Fort Worth 2008, pet. denied).
In furtherance of that policy, Texas Family Code section 153.0071 permits a trial court to refer a suit
affecting the parent-child relationship ("SAPCR") to mediation and provides that a mediated
settlement agreement "is binding on the parties" if the agreement


 (1) provides, in a prominently displayed statement that is in boldfaced type or capital
letters or underlined, that the agreement is not subject to revocation;

 

 (2) is signed by each party to the agreement; and

 

 (3) is signed by the party's attorney, if any, who is present at the time the agreement
is signed.


Tex. Fam. Code Ann. § 153.0071(d).

 Outside the SAPCR context, settlement agreements arising from mediation are
usually not binding when one party timely withdraws his or her consent to the agreement, unless the
other party successfully sues to enforce the settlement agreement as a contract that complies with
Rule 11 of the Texas Rules of Civil Procedure. See id. § 153.0071(e); Milner v. Milner,
361 S.W.3d 615, 618 n.2 (Tex. 2012); Padilla v. LaFrance, 907 S.W.2d 454, 461-62 (Tex.1995);
Boyd v. Boyd, 67 S.W.3d 398, 402 (Tex. App.--Fort Worth 2002, no pet.). Section 153.0071(d),
however, expressly makes mediated settlement agreements binding and irrevocable in suits affecting
the parent-child relationship (subject to limitations not alleged to be applicable in this case) and
creates a procedural shortcut for the enforcement of such agreements. See Tex. Fam. Code Ann.
§ 153.0071(d) (setting forth requirements for binding mediation agreement), (e) (making such
agreements binding without regard to Rule 11 or other rules of law), (e-1) (giving trial court
discretion not to enforce mediated settlement agreement in certain cases involving family violence
or if agreement is not in child's best interest); cf. Milner, 361 S.W.3d at 618 & n.2 (applying section
6.602 of family code, which is worded identically to section 153.0071(d)); Boyd, 67 S.W.3d at 402
(same); Cayan v. Cayan, 38 S.W.3d 161, 166 (Tex. App.--Houston [14th Dist.] 2000, pet.
denied) (same).

 In this case, it is undisputed that Lockwood was not physically present at the
settlement conference and did not sign the settlement agreement. Despite this obvious deviation
from section 153.0071(d)'s express requirements, the Department contends that we must apply a
rebuttable presumption that Lockwood's attorney had authority to settle the case on the terms stated
in the MSA based on the attorney's representation of Lockwood, presence at the settlement
conference, and signature on both the MSA and the final judgment. Such a presumption has been
applied to settlement agreements in general, and the Department contends that Lockwood failed
to produce any evidence in her motion for new trial rebutting the presumption. See, e.g., Kettrick,
2011 WL 3810941, at *8 (rebuttable presumption that attorney retained for litigation has actual
authority to enter into settlement on behalf of client); City of Roanoke, 111 S.W.3d at 629 (same);
Ebner, 27 S.W.3d at 300 (same). Lockwood contends, however, that the application of such a
presumption to mediated settlement agreements in suits affecting the parent-child relationship is
inconsonant with the plain language in section 153.0071(d). We agree with Lockwood.

 Applying the presumption the Department cites would contravene section
153.0071(d)'s requirement that both the parties and their attorneys (if any) sign the agreement. In
addition, allowing an attorney's signature to substitute for a party's signature would render section
153.0071(d)'s disclaimer requirement effectively meaningless because there would be no assurance
that the notice regarding irrevocability was actually conveyed to the client with the statutorily
mandated prominence. It would be absurd to construe section 153.0071(d) in a manner that
effectively renders two of three express requirements superfluous. See City of Rockwall v. Hughes,
246 S.W.3d 621, 625-26 (Tex. 2008) (legislative intent is found in plain meaning of text unless
different meaning is apparent or literal application would lead to absurd results); see also Hunter
v. Fort Worth Capital Corp., 620 S.W.2d 547, 551 (Tex. 1981) (observing that, in enacting
legislation, the legislature is never presumed to do useless or meaningless act).

 The absence of Lockwood's signature on the MSA not only creates doubt about
whether she consented to the agreement, it also creates doubt as to whether she was adequately
apprised of its essential terms, including the statutorily mandated disclaimer. Section 153.0071(d)(1)
requires that a disclaimer regarding irrevocability be "in a prominently displayed statement that is
in boldfaced type or capital letters or underlined." Tex. Fam. Code Ann. § 153.0071(d)(1). This
requirement is for the protection and benefit of the parties, and there would be no point to mandating
such a disclaimer if it were unnecessary for the parties to actually see it. Considering the plain
language in section 153.0071 and the importance of the rights and interests at issue in SAPCR
proceedings, we agree with our sister courts that strict compliance with section 153.0071(d)'s
requirements is essential to forming a binding and irrevocable mediated settlement agreement in such
cases. See Streety v. Hue Thi, No. 05-09-00556-CV, 2010 WL 2278617, at *4 (Tex. App.--Dallas
June 8, 2010, no pet.) (mem. op.) (strict compliance with disclaimer requirement in section
153.0071(d) is essential for binding and irrevocable mediated settlement agreement); Spinks v.
Spinks, 939 S.W.2d 229, 230 n.2 (Tex. App.--Houston [1st Dist.] 1997, no writ) (same). In this
case, it is undisputed that Lockwood did not sign the MSA; thus, the statute's requirements were not
satisfied, there was no evidence at the time of trial that she consented to the terms of the agreement,
and the MSA is no evidence to support the trial court's termination order.


Ineffective Assistance of Counsel

 In Texas, indigent parents in termination proceedings have a statutory right to
counsel. Tex. Fam. Code Ann. § 107.013(a)(1) (West Supp. 2011); In re M.S., 115 S.W.3d at 544. 
Because it would be a useless gesture to recognize the importance of counsel in termination
proceedings by statute but not to require that counsel perform effectively, this statutory right
embodies the right to effective assistance of counsel. In re M.S., 115 S.W.3d at 544. To determine
whether parents in termination proceedings received effective assistance of counsel, Texas courts
apply the two-pronged standard established by the United States Supreme Court in Strickland
v. Washington, 466 U.S. 668 (1984). In re M.S., 115 S.W.3d at 544-45. To satisfy the Strickland
standard, Lockwood must show both (1) that her attorney's performance was so deficient and
contained such serious errors that the attorney was not functioning as counsel, and (2) that the
deficient performance prejudiced her defense to such a degree that she was deprived of a fair trial. 
Strickland, 466 U.S. at 687.

 In determining whether counsel's performance in a particular case is deficient, we
must take into account all of the circumstances surrounding the case and focus on whether counsel
performed in a reasonably effective manner. In re. M.S., 115 S.W.3d at 545. The Texas Supreme
Court has stated that "[c]ounsel's performance falls below acceptable levels of performance when
the 'representation is so grossly deficient as to render proceedings fundamentally unfair.'" Id.
(quoting Brewer v. State, 649 S.W.2d 628, 630 (Tex. Crim. App. 1983)). In considering the
acceptability of counsel's performance, there is "a strong presumption that counsel's conduct falls
within the wide range of reasonable professional assistance," and it is only when counsel's conduct
is "'so outrageous that no competent attorney would have engaged in it,' that the challenged conduct
will constitute ineffective assistance." Id. (quoting Garcia v. State, 57 S.W.3d 436, 440 (Tex. Crim.
App. 2001), and Strickland, 466 U.S. at 689). An assertion of ineffective assistance will be sustained
only if the record affirmatively supports such a claim. See Thompson v. State, 9 S.W.3d 808, 814
(Tex. Crim. App. 1999); Jackson v. State, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994). When the
record is silent as to counsel's subjective motivations, courts will ordinarily presume that the
challenged action might be considered sound trial strategy. See Rylander v. State, 101 S.W.3d 107,
110-11 (Tex. Crim. App. 2003). An error in trial strategy will be deemed inadequate representation
only if counsel's actions are without any plausible basis. Ex parte Ewing, 570 S.W.2d 941, 943
(Tex. Crim. App. 1978); Hollis v. State, 219 S.W.3d 446, 470-71 (Tex. App.--Austin 2007, no pet.).

 To show prejudice, Lockwood "must show that there is a reasonable probability that,
but for counsel's unprofessional errors, the result of the proceeding would have been different." 
Strickland, 466 U.S. at 694. In this context, "[a] reasonable probability is a probability sufficient to
undermine confidence in the outcome," id., and a presumption of prejudice may be warranted if an
indigent parent is denied counsel at a "critical stage" of litigation. See Cronic, 466 U.S. at 659; see
also In re V.V., 349 S.W.3d 548, 560 (Tex. App.--Houston [1st Dist.] 2010, pet. denied) (noting that
cases governed by Cronic are on one end of Strickland continuum). In such circumstances, "[n]o
specific showing of prejudice [is] required," because "the adversary process itself [is] presumptively
unreliable." Cronic, 466 U.S. at 659; see also Smith v. Robbins, 528 U.S. 259, 286 (2000)
(distinguishing denial of counsel altogether on appeal, warranting presumption of prejudice, from
mere ineffective assistance of counsel on appeal, which does not warrant such presumption); Penson
v. Ohio, 488 U.S. 75, 88-89 (1988) (complete denial of counsel on appeal requires presumption of
prejudice); Burdine v. Johnson, 262 F.3d 336, 345 (5th Cir. 2001) (en banc) (noting that prejudice
is presumed when, during "critical stage of a trial," counsel is either (1) totally absent or (2) present
but prevented from providing effective assistance).

 In this case, the record reflects that Lockwood's attorney did not appear at trial. Thus,
Lockwood, who also did not appear at trial, was not represented at trial by her appointed counsel or
anyone else. The MSA, which did not comply with the statute, was incorporated into an order
without objection. Lockwood also points out that there are variances between the testimony
regarding her noncompliance with the court's orders and the actual content of the orders that should
have been subjected to adversarial testing, but were not. There is no plausible strategic reason for
trial counsel's failure to appear at a critical stage of litigation and subject the Department's case to
appropriate adversarial testing. Applying the principles in Strickland and Cronic to this case, we
conclude that the adversarial process employed here was so unreliable that a presumption of
prejudice is warranted.

 Even if the Cronic presumption did not apply, Lockwood's failure to receive any
representation at the termination hearing undermines our confidence in the outcome. Likewise, the
Department had no notice that Lockwood was contesting her consent to the MSA when it proceeded
with an accelerated trial schedule and presented its case. Consequently, the presentation of the
merits of this case was improperly skewed. The State, the child, and the parents share an interest in
an accurate and just decision. See In re M.S., 115 S.W.3d at 547-48; In re B.L.D., 113 S.W.3d 340,
353 (Tex. 2003). Accordingly, we will reverse the trial court's judgment and, in the interests of
justice, remand this cause for further proceedings without considering whether the additional
evidence that was offered at trial would otherwise be sufficient to support termination of the
parent-child relationship. See Tex. R. App. 43.3(b); Knapp v. Wilson N. Jones Mem'l Hosp.,
281 S.W.3d 163, 176 (Tex. App.--Dallas 2009, no pet.) ("Appellate courts have broad discretion
to remand a case for a new trial in the interest of justice. . . . Remand is appropriate when, for any
reason, a case has not been fully developed."); Ahmed v. Ahmed, 261 S.W.3d 190, 195-96 (Tex.
App.--Houston [14th Dist.] 2008, no pet.) ("Remand is appropriate if a case needs further
development because it was tried on an incorrect legal theory or to establish and present evidence
regarding an alternate legal theory." (citations omitted)).


CONCLUSION

 For the foregoing reasons, we reverse the trial court's order terminating Lockwood's
parental rights to J.A. and remand the cause to the trial court for further proceedings.


 _________________________________________

 J. Woodfin Jones, Chief Justice

Before Chief Justice Jones, Justices Rose and Goodwin

Reversed and Remanded

Filed: June 26, 2012
1. The statute governing involuntary termination of parental rights was amended effective
September 1, 2011, but the amendments are not material to the issues in this case. We therefore cite
to the current statute for convenience.